## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAYMAN POWER BARGE I, LTD.
c/o Corporate Filing Services Ltd.
PO Box 613 GT, 4th Floor Harbour Centre
Grand Cayman, Cayman Islands,

Applicant,

v.

THE STATE OF THE DOMINICAN REPUBLIC,
and CORPORACIÓN DOMINICANA DE
EMPRESAS ELÉCTRICAS ESTATALES (formerly
known as CORPORACIÓN DOMINICANA DE
ELECTRICIDAD),

Respondents.

Civil Action No. *061362*

**APPLICATION TO CONFIRM
FOREIGN ARBITRAL AWARD**

Applicant Cayman Power Barge I, Ltd. ("CPB"), a Cayman Islands company, by and

through its attorneys, Dechert LLP, respectfully alleges as and for its Application against

Respondents the State of the Dominican Republic ("Dominican Republic"), a sovereign state,

and Corporación Dominicana de Empresas Eléctricas Estatales ("CDEEE"), a Dominican state

entity, as follows:

### INTRODUCTION

1.      This is an action for recognition and enforcement of a foreign arbitral award

pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9

U.S.C. § 201 et seq. (the "Convention"). An arbitral award was rendered in favor of CPB by an

arbitral tribunal established under the Rules of Arbitration of the International Court of

Arbitration of the International Chamber of Commerce (the "ICC") on May 30, 2005, and

dispatched to the parties by the ICC on or about July 11, 2005.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to 9 U.S.C. § 203, 28 U.S.C. §§ 1330 & 1331, and 28 U.S.C. § 1602 et seq.  Jurisdiction exists under those provisions because this is an action brought pursuant to the Convention, and also because the Dominican Republic is a foreign state and CDEEE is an agency or instrumentality of a foreign state, as defined in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq. ("FSIA"), and Respondents are not entitled to immunity under the FSIA.

3.     The arbitral award should be deemed governed by the Convention under 9 U.S.C. § 202.  Pursuant to 28 U.S.C. § 1605(a)(6)(B), Respondents are not entitled to immunity from suit in an action brought to confirm an award governed by that Convention.

4.     This Court has personal jurisdiction over Respondents under 28 U.S.C. § 1330(b).

5.     Venue is proper in this Court pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391, in that the Dominican Republic is a foreign state and CDEEE is an agency or instrumentality of a foreign state.

## PARTIES

6.     Applicant CPB is a limited liability company organized under the laws of the Cayman Islands.

7.     Respondent Dominican Republic is a "foreign state" as defined in 28 U.S.C. § 1603, located on the island of Hispaniola in the Caribbean Sea.

8.     Respondent CDEEE is a public company organized under the laws of the Dominican Republic and is an "agency or instrumentality of a foreign state" as defined in 28 U.S.C. § 1603.  CDEEE is the legal successor to another Dominican state entity, Corporación Dominicana de Electricidad ("CDE").

## THE AGREEMENT TO ARBITRATE AND THE ARBITRAL AWARD

9.    On or about March 17, 1998, CPB, on the one hand, and the Dominican Republic,

represented by CDE, on the other hand, entered into a written agreement relating to the supply of

power to CDE and the Dominican Republic with the use of a barge-mounted power generation

facility, which was owned and operated by CPB (the "Agreement"). The Agreement was

subsequently amended by the parties in a writing dated July 2, 1999. True and correct copies of

the Agreement and the amendment thereto are attached as Exhibit A to the accompanying

Declaration of Genevieve M. Hartel ("Hartel Declaration"). Certified English translations of the

Agreement and the amendment thereto are attached as Exhibit B to the Hartel Declaration.

10.    CDE signed the Agreement on behalf of the Dominican Republic, but also

explicitly incurred a number of obligations on its own behalf under the Agreement, and was a

beneficiary of the services to be provided by CPB under the Agreement. Hartel Decl., ¶ 3 and

Exhs. A and B thereto.

11.    CDEEE subsequently became the legal successor to CDE. Hartel Decl., ¶ 7.

12.    Article 18 of the Agreement provides as follows:

"ARTICLE 18:  ARBITRATION

18.1    INTERNATIONAL ARBITRATION

In the case of any dispute, controversy, reclamation or difference (each a
"Dispute") arising out of or in connection with this AGREEMENT, the aggrieved
PARTY shall give written notice of same to the other PARTY. The PARTIES
shall strive to resolve such Dispute in an amicable manner. If within one (1)
MONTH of the notification of a Dispute it has not been resolved, at the request of
any PARTY the Dispute shall, regardless of its nature, be referred to arbitration
and finally settled in accordance with the arbitration rules established by the
International Chamber of Commerce in effect in Paris, France (the "ICC Rules").

18.2    The arbitration proceedings shall be held in Paris, France.

18.3    The right of the PARTIES to request a resolution of a dispute or a

determination of a proceeding in conformance with this AGREEMENT will not be affected by the fact that any of the PARTIES has received partial compensation on an absolute or conditional basis from any third party (whether it be an individual, state, governmental agency or an international organization) due to any loss or damage subject to the dispute.

18.4    Any arbitration panel constituted per this AGREEMENT should apply the LAWS OF THE DOMINICAN REPUBLIC and the principles generally accepted of the International Law.

18.5    Any arbitration under this Article will be addressed by a panel constituted of (3) arbitrators. No arbitrator shall be admitted who has had entailments or business relations with any of the PARTIES. The arbitration will take place in Spanish. The decision of the arbitration panel will be definitive and obligatory for the PARTIES. Each PARTY will have the right to choose an arbitrator and the third one will be designated in accordance with the Rules of the International Chamber of Commerce of Paris, France (ICC).

18.6    The PARTIES will go to court and agree to submit to the jurisdiction for arbitration or litigation if necessary for the imposition of any award of the arbitration resolution issued by the panel of arbitrators per this Article. This award of jurisdiction accepted by the PARTIES will be applied to any arbitration proceedings, as well as the decision or arbitration resolution issued by the panel of arbitrators.

18.7    The PARTIES agree that any arbitration or judgment can be satisfied against any property or asset of the PARTIES located anywhere.

18.8    The PARTIES will be solely liable under this AGREEMENT. No shareholder, investor, employee, director, officer or representative of THE STATE, nor of THE SELLER, will be personally responsible or individually subject to a liability of any type with respect to this AGREEMENT even if permitted by the laws that govern the domiciles of the PARTIES.

18.9    The resolution produced should decide the arrangements necessary for the solution of the dispute or the termination of this AGREEMENT and the same should have the vote of at least two (2) of the arbitrators and will be without appeal by the PARTIES. The cost of this arbitration should be distributed between the PARTIES as specified by the Administrative Resolutions of the International Chamber of Commerce of Paris, France in fifty percent (50%) between the PARTIES."

13.    After the Agreement was executed, CPB complied with its obligations under the

- 4 -

Agreement and duly supplied power to Respondents. Respondents, however, breached the Agreement in numerous respects, including by failing to make the required payments to CPB and by failing to replenish a letter of credit in favor of CPB. On or about September 20, 2001, CPB submitted a Request for Arbitration to the ICC.

14.     An arbitral tribunal was constituted in accordance with Article 18 of the Agreement. Pursuant to Article 18.2 of the Agreement, the place, or formal seat, of the arbitration was Paris, France.

15.     CDEEE participated in the arbitration as a party after notifying the Tribunal that it was the legal successor to CDE and had been formed to replace CDE. Hartel Decl., ¶ 7.

16.     During the course of the arbitration the parties undertook a full exchange of written evidence and pleadings. Neither party requested an evidentiary hearing, and, pursuant to the Article 20(2) of the ICC Rules, the Tribunal concluded that the dispute could be decided on the basis of the parties' written submissions. Hartel Decl., ¶ 8. A true and correct copy of the ICC Rules is attached as Exhibit C to the Hartel Declaration.

17.     The Tribunal issued its Final Award on May 30, 2005 (the "Award"). The Award was subsequently approved by the ICC, and was dispatched to the parties by the ICC on or about July 11, 2005. The award was rendered in Spanish. A true and correct copy of the Award is attached as Exhibit F to the Hartel Declaration, and a certified English translation of the Award is attached as Exhibit G.

18.     In the Award, the Tribunal concluded that Respondents breached the Agreement in several respects, including by failing to make the required payments to CPB and to replenish the letter of credit. The Tribunal rejected the defenses to payment that were advanced by Respondents, and dismissed the counterclaims asserted by Respondents.

19.    As a result of Respondents' breaches of the Agreement, the Tribunal ordered

Respondents, jointly and severally, to pay CPB the following amounts:

    a.    US$ 3,398,365.32 in damages (a sum reflecting the principal debt of US$

        3,684,300.93 that is owed to CPB for the supply of power, plus US$

        65,833.74 due to CPB under the Agreement as reimbursement for a tax

        paid by CPB, minus US$ 351,769.35 for the value of certain fuel supplied

        to CPB by Respondents);

    b.    Monthly interest of 1%, the rate specified in Article 10.5 of the

        Agreement, to be incorporated into the principal owed every month, from

        the following dates:

         -    US$ 2,198,457.95 on July 24, 2001;

         -    US$ 103,397.81 on August 20, 2001;

         -    US$ 552,722.77 on August 30, 2001;

         -    US$ 829,722.40 on September 20, 2001;

    c.    US$ 84,082.39 for attorneys' fees and legal expenses.

    15.    Respondents agreed in the Agreement not to challenge any award of the ICC and

that any such award could be satisfied against any of Respondents' assets.  In particular, Article

18.8 provides that "the resolution produced [by the arbitrators] . . . will be without appeal by the

PARTIES," and Article 18.1 provides that "the PARTIES agree that any arbitration [award] or

judgment can be satisfied against any property or asset of the PARTIES located anywhere."

    16.    Article 28(6) of the ICC Rules of Arbitration provides: "Every Award shall be

binding on the parties.  By submitting the dispute to arbitration under these Rules, the parties

undertake to carry out any Award without delay and shall be deemed to have waived their right

to any form of recourse insofar as such waiver can validly be made."

17.    The Award is considered final and binding under French law, the law of the place where the Award was rendered. *See* Declaration of Gillian Lemaire, ¶ 4.

18.    Under Article 19 of the Agreement, Respondents have unconditionally and irrevocably agreed that in any proceedings brought against Dominican Republic under the Agreement, no sovereign or other immunity shall be claimed by or on behalf of Dominican Republic on behalf of itself or with respect to its assets. Respondents further consented under Article 19 to the giving of any relief in connection with any proceeding to enforce an arbitral award against them (including, without limitation, the enforcement or execution against any property whatsoever, independent of its use or intended use).

19.    CDEEE has also acknowledged the validity of the Award, and CDEEE's obligation to satisfy the same, in written correspondence subsequent to the issuance of the Award. Among other things, CDEEE sent a letter to counsel for CPB dated September 28, 2005 in which CDEEE stated as follows:

> "In response to the notice served in the above-captioned matter, this is to inform you that the CDEEE intends to abide by the decision handed down by the International Court of Arbitration. For this purpose, please be informed that the sums that this establishment has been ordered to pay with respect to the above-mentioned action, including professional fees, will be allocated for inclusion in our budget for the year 2006."

20.    A true and correct copy of the above letter is attached as Exhibit A to the accompanying Declaration of Robert A. Cohen, and a certified English translation is attached as Exhibit B.

21.    Respondents have nevertheless failed to pay CPB the amounts due under the Award, despite repeated requests.

22.    Pursuant to the Convention, District of Columbia Code § 15-108, and the terms of

the Award, CPB is entitled to prejudgment interest, calculated at the contractual rate, on the Award amount.

WHEREFORE, Applicant CPB respectfully requests that this Court, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et seq., enter an Order against Respondents:

1.    Confirming the aforementioned Award and granting judgment in favor of CPB and against Respondents, jointly and severally, in the amount of:

      a.    US$ 3,398,365.32 as damages;

      b.    Monthly interest of 1%, to be incorporated into the principal owed every month, from the following dates up to the date of entry of judgment:

          -    US$ 2,198,457.95 on July 24, 2001;

          -    US$ 103,397.81 on August 20, 2001;

          -    US$ 552,722.77 on August 30, 2001;

          -    US$ 829,722.40 on September 20, 2001;

      c.    US$ 84,082.39 for attorneys' fees and legal expenses in connection with the arbitration.

2.    Awarding CPB its costs, including attorneys' fees, in this proceeding,

3.    Awarding CPB such other and further relief as the Court may deem to be just and proper, including, as appropriate, the posting of security.

Dated: July ____, 2006                    By: _____

DECHERT LLP
Frank J. Eisenhart (D.C. Bar No. 418630)
Christian A. Natiello (D.C. Bar No. 473960)
1775 I Street, NW
Washington, D.C. 20006-2401
Telephone: (202) 261-3300
Facsimile: (202) 261-3333

Attorneys for Applicant
Cayman Power Barge I, Ltd.