# EXHIBIT B

**ICC International Court of Arbitration**
**Case No. 11772/KGA/CCO**

**Dated as of July 11, 2005**



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Deniza Kudish, a translator with TransPerfect Translations Inc., herby certify that I am fluent in the Spanish and English languages. I have been translating documents for over 30 years and am competent to translate from Spanish into English.

I hereby certify that the attached documents are, to the best of my knowledge and belief, accurate English translations of the following Spanish-language documents: (a) a letter from the ICC dated July 11, 2005 to Messrs. Reynolds, Pereyra and Perez forwarding an arbitral award, and (b) an arbitral award issued by the ICC International Court of Arbitration dated May 30, 2005 in the matter of <u>Cayman Power Barge I, Ltd. v. El Estado de la Republica Dominicana et al.</u>

_____
Deniza Kudish

Sworn before me this
29th day of June, 2006

_____
Signature, Notary Public

PAUL D. RALSTON
otary Public, State of New Yo
No. 01RA6023867
Qualified in Queens County
nmission Expires May 3,

_____
Stamp, Notary Public
State of New York

*Hartel Decl.*
*Exh. G*

ICC
International Chamber of Commerce
*The world business organization*

**International Court of Arbitration**

July 11, 2005/pt

**11772/KGA/CCO - CAYMAN POWER BARGE I, LTD (Cayman Islands) vs. 1. THE
STATE OF THE DOMINICAN REPUBLIC (Dominican Republic) - 2. CORPORACION
DOMINICANA DE ELECTRICIDAD (Dominican Republic)**

John Reynolds and Genevieve Marie Hartel, Esq.
JONES, WALKER, WAECHTER, POITEVENT, CARRERE & DENEGRE LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
United States of America
*By DHL*

Dr. Luis Miguel Pereyra
PEREYRA & ASOCIADOS
Mustafa Kemal Ataturk No. 52
Ensanche Naco
Santo Domingo, National District
Dominican Republic
*By DHL*

Dr. Praxedes Castillo Perez and Atty. Americo Moreta Castillo
CASTILLO AND CASTILLO
Avenida Lope de Vega, building No. 4
Sector Naco
Santo Domingo
Dominican Republic
*By DHL*

Dear Madame, Dear Sirs:

Please find enclosed an original of the Final Award dated May 30, 2005 rendered by the Arbitral
Tribunal in the arbitration proceedings in reference.

The Secretariat of the ICC, International Court of Arbitration, makes this communication of the
Final Award pursuant to Article 28 of the ICC Arbitration Rules (the "Rules"). The Final Award
was approved by the Court in its session of May 13, 2005.

ICC International Court of Arbitration
38, Cours Albert 1, 75008 Paris, France
Telephone +33 1 49 53 28 28 Fax +33 1 49 53 29 29 / +33 1 49 53 29 33
Website www.iccarbitration.org          E-mail arb@iccwbo.org

11772/KGA/CCO

Pursuant to articles 31 and 31(2) of the Rules, the Court determined the administrative expenses of the ICC and the fees of the members of the Arbitral Tribunal as follows:

| | |
|---|---|
| - ICC administrative expenses: | US$ 30,472 |
| - Fees of the President of the Tribunal: | US$ 107,250 |
| - Fees of the Mr. Garro: | US$ 64,350 |
| - Fees of Mr. Bottaro-Lupi: | US$ 42,900 |

Since the performance of the mission of the Arbitral Tribunal caused expenses of US$ 40,028, the total amount of the arbitration costs is US$ 285,000.

We take the liberty of reminding the parties that, in this case, the parties have made the following payments:

| | |
|---|---|
| - Plaintiff: | US$ 205,000 |
| - Defendants: | US$ 215,000 |

Consequently, US$ 135,000 must be reimbursed to the parties as follows:

| | |
|---|---|
| - Plaintiff: | US$ 62,500 |
| - Defendants: | US$ 72,500 |

after they send us their bank instruction.

The Secretariat invites the parties to send said bank instructions within **15 days** after receipt of this letter.

The Secretariat takes this opportunity to call the attention of the parties to the content of article 28(6) of the Rules. Said rule establishes:

> *"Every Award shall be binding on the parties. By submitting the dispute to arbitration under these Rules, the parties undertake to carry out any Award without delay and shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made."*

Taking into account the fact that the Secretariat will soon file off this arbitration case, please note that any documents submitted by the parties or the members of the Arbitral Tribunal will be destroyed unless one of the parties or one of the arbitrators requests in writing within **30 days** following receipt of this letter that the Secretariat send them said documents. Please take note that the expenses for shipping the documents must be paid by the party or arbitrator who requests it.

However, the Secretariat, pursuant to Article 1(6), Appendix II of the Rules will keep in the files of the Court an original of the Partial Award and Final Award, an original of the Terms of Reference, as well as the documents containing the decisions of the Court and copies of the relevant correspondence of the Secretariat.

11772/KGA/CCO                                                    page 3

Lastly, since the Court makes constant efforts to improve its services in order to meet the needs and expectations of the users of the ICC arbitration, we are asking you to fill out and return to us, to the attention of the General Counsel, as soon as possible, the enclosed evaluation form. Any information provided through said form will be kept strictly confidential.

Sincerely,
[signature]
Christian Conejero Roos
Counsel
Secretariat of the ICC International Court of Arbitration

Enclosure:     - Original of the Final Award dated May 30, 2005.
               - Evaluation Form A-I

cc:    Atty. Jean-Paul Beraudo          (By Fax No. 04 94 40 47 19)
       Dr. Alejandro Miguel Garro       (By Fax No. 00 1 212 854 7946)
       Dr. Luis Enrique Bottaro-Lupi    (By Fax No. 00 58 2 122 63 77 44)

ICC
International Chamber of Commerce
*The world business organization*

**International Court of Arbitration**

**AWARD**

ICC International Court of Arbitration
38, Cours Albert 1, 75008 Paris, France
Telephone +33 1 49 53 28 28 Fax +33 1 49 53 29 33
Website www.iccarbitration.org          E-mail arb@iccwbo.org

ICC INTERNATIONAL COURT OF ARBITRATION

CASE No. 11772/KGA/CCO

CAYMAN POWER BARGE I, LTD.
(Cayman Islands)

vs.

1. THE STATE OF THE DOMINICAN REPUBLIC
(Dominican Republic)

2. CORPORACION DOMINICANA DE ELECTRICIDAD
(Dominican Republic)

This document is an original of the Final Award rendered in conformity with the
Rules of the ICC International Court of Arbitration.

**ICC 11772/KGA/CCO**

## FINAL AWARD

Rendered by the Arbitral Tribunal made up of:

Jean-Paul BERAUDO, President, appointed by the International Court of Arbitration;

Alejandro M. GARRO, Co-Arbitrator, designated by the Plaintiff, confirmed by the International Court of Arbitration;

Luis Enrique BOTTARO-LUPI, Co-Arbitrator, appointed by the International Court of Arbitration, on behalf of the Plaintiffs.

Between:

*Plaintiff:*
CAYMAN POWER BARGE I, LTD,
c/o Midland Trust Corporation (Cayman) Ltd.
P.O. Box 1109
Mary Street
Grand Cayman
Cayman Islands

Represented by:
John Reynolds and Genevieve Marie Hartel, Esq.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre Llp
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
United States of America

Dr. Luis Miguel Pereyra
Pereyra & Asociados
Mustafa Kemal Ataturk No. 52, Ensanche Naco
Santo Domingo, National District
Dominican Republic

AND

*Defendants:*
THE STATE OF THE DOMINICAN REPUBLIC
The State of the Dominican Republic
through its authorized representative
Corporación Dominicana de Electricidad
Main Building
Avenida Independencia Corner of Fray Cipriano de Utrera
Centro de los Heroes
Santo Domingo
Dominican Republic

and

CORPORACION DOMINICANA DE ELECTRICIDAD and its legal successor,
CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES
(CDEEE),
Main Building
Avenida Independencia Corner of Fray Cipriano de Utrera
Centro de los Heroes
Santo Domingo
Dominican Republic

Represented by:
Dr. Praxedes Castillo Perez and Atty. Americo Moreta Castillo
Castillo and Castillo
Avenida Lope de Vega, building No. 4
Sector Naco
Santo Domingo
Dominican Republic

*********

**INDEX**

Preamble (No. 1 to 6).
Resolution of this dispute (No. 6 to 8).
Chronology of the proceedings (No. 9).

Extensions of the terms by the International Court of Arbitration (No. 10).
　　　Terms of Reference.
　　　Final Award.

Litigious points (No. 11 to 14).

Litigious points resolved previously.
Litigious points pending resolution.

Validity of the composition of the Arbitral Tribunal (No. 15 to 28).

POSITIONS OF THE PARTIES (No. 29 to 77).
Position of the Plaintiff (No. 29 to 47).
Position of the Defendants (No. 48 to 77).

DECISIONS OF THE ARBITRAL TRIBUNAL (No. 78 to 193).
The alleged invalidity of the contract due to lack of approval of the Agreement by the Congress (No. 78 to 79).
Validity of the tax exonerations or exemptions (No. 80 to 90).

The agreement between the parties and governing law (No. 91 to 93).
        Notifications (No. 94 to 98).
        Payment terms (No. 99 to 100).
        Interest owed in the event of delay (No. 101).
        Letter of credit (No. 102).
        Termination of the contract (No. 103 to 105).

Default of the parties (No. 106 to 117).
        - Alleged abusive use of the letter of credit by the Plaintiff (No. 107 to 117).
        - Obligations of the parties in light of the Protocol of Agreement and the clauses of the Agreement (No. 118 to 122).
        - Default of the Plaintiffs on their obligation to supply fuel, to replenish the funds of the letter of credit and to pay invoices (No. 123 to 129).
        - Termination of the contract by the Plaintiff CPB (No. 130 to 137).
        - Alleged contractual default of the Plaintiff by abandoning the Dominican Republic and interrupting negotiations (No. 138 to 145).

Merit of the claims filed by Plaintiff CAYMAN POWER BARGE (No. 146 to 178).
        - Invoices (No. 147 to 154).
        - Excessive fuel consumption (No. 155 to 157).
        - Guaranteed dispatch (No. 158 to 160).
        - The interest applicable to said amounts (No. 161 to 169).
        - Account conciliation (No. 170 to 174).
        - Indemnity for damage (No. 175 to 177).
        - Joint nature of the debt of the Dominican State and CDEEE.

Counterclaims (No. 179 to 187).
Arbitration costs and defense expenses (No. 188 to 192).
Hold (No. 193).

## PREAMBLE

1. In a Power Purchase Agreement signed on March 17, 1998 ("the Agreement") and its amendment of July 2, 1999, CAYMAN POWER BARGE (hereinafter "CPB" or Plaintiff) undertook to sell to the State of the Dominican Republic ("the State") represented at the time by Corporación Dominicana de Electricidad or "Corporation," and its legal successor named Corporación Dominicana de Empresas Estales or "CDEEE." The State, the Corporation and CEE (jointly "the Defendants") undertook to buy "the entire net power production of a powerbarge, also identified in the Agreement as "power generation facility mounted on a barge" and the power generation units identified as "Additional Capacity." (Agreement, clauses 1.44, 1.46, 2.1).

2. The preamble of the Agreement mentions that *"given the precariousness and the emergency situation experienced in the national power generation system,"* the Dominican State needed *"additional power and energy to meet the requirements of the users of this service"* in future years. Consequently, it is indicated under Preamble that they wanted to promote power generation in the Dominican Republic by *"proprietary facilities and private financing"* (Preamble, whereas paragraph 2).

Among the various bids received, the State selected Cayman Power Barge, the Plaintiff. Said company submitted a *"bid for sale of power which will generate sixty (60) MW, to be delivered in two (2) phases; the first phase will consist of a facility called Powerbarge I with thirty (30) MW, and the second phase will consist of an expansion of no more than thirty (30) MW, subject to the terms of this agreement."* According to the clauses of the contract, CPB built, installed and maintained the generating barge or Powerbarge.

3. The parties agreed on a monthly payment for the power produced by the generating barge: On the tenth day of each month, CPB sent to the Corporation an invoice for the power delivered during the previous months. *"Within twenty five business days from receipt of the invoice by the Corporation...the State will pay all invoices delivered under this Agreement in Dollars with immediately available funds by certified check delivered to an authorized representative of the seller designated in the invoice"* (clause 10.3.1).

In the event of delay in payment *"the amounts owed will produce legal interest of one (1%) per*

*month from the due date to the date the payment is received by the seller"* (clause 10.5).

To guarantee its payment obligation, the State undertook to maintain, extend, replenish or reissue a Letter of Credit with a nominal value of US$ 2,044,912.50 (clause 11).

**4.** Alleging the default of the State on its payment obligation within the terms stipulated in the Agreement, CPB withdrew all the funds of the Letter Of Credit after communicating the defaults by letters dated April 17 and May 11, 2000.

CPB alleges that the state did not replenish the Letter Of Credit, which, pursuant to clause 22.4 of the Agreement, caused CPB to communicate its intent to terminate the Contract by letter sent on May 23, 2000.

On July 8, 2000 the parties signed a "Memorandum of Understanding" under which CDE agreed to reissue the Letter Of Credit at the latest by July 30, 2000. CPB alleges that given the failure of the corporation to comply with its obligation of reissuing the Letter Of Credit according to the memorandum, and also after several failed attempts to obtain a payment, CPB notified the State and the Corporation that it would be obligated to start arbitration proceedings if the State and the Corporation did not reissue the Letter Of Credit and pay the outstanding invoices in full, totaling US$ 2,198,457.95 plus the corresponding interest, by July 31, 2001.

**5.** CPB indicates that, since the State and Corporation did not remedy the causes of default, on August 1, 2001 CPB communicated its decision to interrupt the production of electricity and explained that *"the Powerbarge will remain closed, waiting for the resolution of the aforementioned causes of default."* Afterwards, it left Dominican waters.

The Corporation and CDEEE indicate that by letter of February 26, 2002, CPB cancelled the meeting scheduled with CDE technicians in order to reconcile the debt to CPB.

**THE RESOLUTION OF THIS DISPUTE**

**6** - The resolution of the disputes is set forth in article 18 of the Contract. Paragraphs 18.1 to 18.7 indicate the following:

*"18.1 INTERNATIONAL ARBITRATION*
*In the event of any dispute, controversy, claim or disagreement (each a "Dispute")*

arising from or in connection with this AGREEMENT, the affected PARTY will communicate it in writing to the other PARTY. The PARTIES will attempt to resolve the Dispute amicably. If, within one (1) months after the notice of a Dispute, it has not been resolved at the request of any PARTY, the Dispute, regardless of its nature, will be referred to arbitration and finally resolved pursuant to the arbitration rules of the International Chamber of Commerce valid in Paris, France (the "ICC Rules").

18.2 The arbitration proceedings will be conducted in Paris, France.

18.3 The rights of the PARTIES to request a resolution of a dispute or a determination in a proceeding according to this AGREEMENT will not be affected by the fact that either one of the PARTIES received partial compensation on a conditional or absolute basis from any third party (be it an individual, a state, a government agency or an international organization) for any loss or damage subject to the dispute.

18.4 Any Arbitral Tribunal constituted pursuant to this AGREEMENT must apply the Laws of the Dominican Republic and the generally accepted principles of International Law.

18.5 Any arbitration under this Article will be conducted by a group made up of three arbitrators. No arbitrator will be admitted if he had links or labor relations with either one of the PARTIES. The arbitration will be conducted in Spanish. The decision of the Arbitral Tribunal will be final and binding for the PARTIES. Each PARTY will be entitled to choose one arbitrator and a third will be designated according to the Rules of the International Chamber of Commerce of Paris, France (ICC).

18.6 The PARTIES will go to court and agree to submit to jurisdiction for arbitration or litigation, if necessary, to impose any arbitration award issued by the group or arbitrators under this Article. This choice of jurisdiction, which the PARTIES accept, will apply to any arbitration proceeding as well as to the decision or arbitration award rendered by the group of arbitrators.

18.7 The PARTIES agree that any arbitration or lawsuit may be paid with any property or assets of the PARTIES located anywhere."

7. Article 19 on sovereign immunity indicates the waiver of such immunity:
"Article 19: SOVEREIGN IMMUNITY.
THE CORPORATION and THE STATE, each unconditionally and irrevocably:
    a) Agree that the signing, delivery and compliance by the respective party with this AGREEMENT constitute private and commercial ct rather than public or government acts;
    b) They agree that, if any proceeding is filed against THE STATE or its assets in any jurisdiction in connection with this AGREEMENT, it may not claim any

*sovereign or other immunity from such proceeding by or in the name of party in connection with its assets;*

*c) They waive any sovereign immunity right or other immunity they may have or any held by any of their assets now or in the future in any jurisdiction; and*

*d) Generally agree with the imposition of any arbitration award or sentence against them in any proceeding or jurisdiction and the granting of any relief in connection with such proceeding (including, without limitation, the establishment, imposition or execution against or in connection with property, regardless of its use or intended use)...."*

**8.** In a letter received by ICC on September 20, 2001, CPB addressed the International Court of Arbitration of the ICC to request an arbitration award. The Defendants answered the petition on January 29, 2003.

*********

## 9. CHRONOLOGY OF THE PROCEEDINGS

September 20, 2001: receipt of the arbitration petition by the Secretariat of the Court.

September 22, 2001: invitation to the Defendants to answer.

October 23, 2001: receipt of the advance provision for arbitration expenses.

November 15, 2001: the Court, convinced, *prima facie*, of the possible existence of an arbitration agreement in accordance with the Rules decided that the arbitration could proceed.

November 16, 2001: invitation to the Defendants to designate a co-arbitrator.

March 7, 2002: the Court appointed Mr. Jean-Paul BERAUDO, President of the Arbitral Tribunal according to the proposal of the National French Committee.
The Court confirmed Attorney Alejandro Miguel GARRO as Co-Arbitrator designated by the Defendant.
The Court appointed directly Attorney Luis Rafael PELLERANO as Co-Arbitrator on behalf of the defendants, which refrained from designating a co-arbitrator.

April 8, 2002: petition challenging Attorney Luis Rafael

PELLERANO filed by Corporación Dominicana de Electricidad.

April 10, 2002: transmission to the parties of the first Terms of Reference draft prepared by the Court.

May 28, 2002: presentation by the defendants of Dr. Rafael Tulio PEREZ DE LEON as possible co-arbitrator.

May 31, 2002: acceptance by the Court of the petition challenging attorney Luis Rafael PELLERANO filed by the Defendants.

June 14, 2002: designation by the Defendants of Dr. Rafael Tulio PEREZ DE LEON as Co-Arbitrator.

July 5, 2002: confirmation by the Court of the designation of Dr. Rafael Tulio PEREZ DE LEON.
Invitation of the Court to the defendants to submit their answer to the arbitration petition.

July 22, 2002: the defendants request a declaration of nullity of the arbitration petition.

July 31, 2002: the lawyers of CDE communicate that its legal successor is CDEEE, Corporation Dominicana Empresas Electricas Estatales.

August 9, 2002: challenging petition filed by CAYMAN POWER BARGE against Co-Arbitrator PEREZ DE LEON.

August 30, 2002: the Court accepts the petition challenging Co-Arbitrator PEREZ DE LEON.

September 5, 2002: the lawyers Dr. Praxedes CASTILLO PEREZ and Attorney Americo MORETA CASTILLO, already lawyers of CDEEE, announce that they will also represent the Dominican State.

September 18, 2002: joint designation by the defendants of Dr. Manuel V. RAMOS as Co-Arbitrator.

October 4, 2002: objection of the defendant against the confirmation by the Court of Dr. Manuel V. RAMOS as Co-Arbitrator.

October 25, 2002: the Court decided not to confirm Dr. Manuel V. RAMOS and granted the defendants a term of 7 days to designate an independent arbitrator.

November 15, 2002: the Court appointed Dr. Luis Enrique BOTTARO-LUPI as Co-Arbitrator on behalf of the defendants, pursuant to article 9(6) of the Arbitration Rules.

December 5, 2002: the defendants submitted a petition challenging Dr. Luis Enrique BOTTARO-LUPI.

December 19, 2002: the Court rejected the petition challenging Co-Arbitrator Dr. Luis Enrique BOTTARO-LUPI.

January 2, 2003: referring to its letters of August 1 and November 16, the Arbitral Tribunal repeated the invitation made to the defendants to submit their answers to the arbitration petition.

January 29, 2003: answers from CDEEE and the Dominican State.

February 7, 2003: petition to the answers of the defendants.

February 15, 2003: transmission to the parties of a second Terms of Reference draft.

March 7, 2003: comments of the plaintiffs and the defendants on the Terms of Reference draft.

March 12, 2003: answer of the defendants to the comments of the plaintiff concerning the Terms of Reference draft.

April 10, 2003: transmission to the parties of a third Terms of Reference draft.

April 30, 2003: the defendants indicate they wait for the signing of the Terms of Reference by the Plaintiff.

May 15, 2003: comments of the plaintiff on the Terms of Reference project.

May 20, 2003: transmission to the parties of a fourth Terms of Reference draft.

May 21, 2003: signing of the Terms of Reference draft by CAYMAN POWER BARGE.

May 27, 2003: comments of the Defendants on the Mission

Document draft.

June 9, 2003: transmission to the parties of a fifth Terms of Reference draft.

July 3, 2003: signing of the Terms of Reference by CAYMAN POWER BARGE.

July 4, 2003: signing of the Terms of Reference by the Defendants. Expanded brief of the Defendants on the lack of jurisdiction of the Arbitral Tribunal.

July 7, 2003: the Arbitral Tribunal indicates that it is deliberating on its jurisdiction and that it will render a preliminary award.
Plaintiff CAYMAN POWER BARGE requests a term to submit a brief on the topic of the jurisdiction of the Arbitral Tribunal.
Signing of the Terms of Reference. Approval of the Terms of Reference by the Court.

July 11, 2003: the Arbitral Tribunal rejects the petition of the Plaintiff to submit a brief on the topic of the jurisdiction of the Arbitral Tribunal.

August 7, 2003: transmission to the Court of the Preliminary Award draft on the jurisdiction of the Arbitral Tribunal.

August 22, 2003: approval of the Preliminary Award draft by the International Court of Arbitration.

September 19, 2003: signing of the Preliminary Award by the members of the Arbitral Tribunal.

September 23, 2003: communication of the Preliminary Award by the Secretariat of the Court.

September 27, 2003: consultations with the parties to establish a provisional schedule.

October 14, 2003: transmission to the parties of the provisional schedule.

November 14, 2003: transmission by the Plaintiff of its brief of petition.

January 9, 2004: transmission by the Defendants of their brief of defense.

January 15, 2004: the Arbitral Tribunal invites the Defendants to quantify the amount of their counterclaims and submit justifications for their own evaluation of what they owe to the Plaintiff.

January 30, 2004: the Defendants submit a quantification of the amount of the indemnities.

February 9, 2004: rectification brief concerning the amount of the indemnities requested by the Plaintiffs.

February 20, 2004: brief of answer of the Defendant.

April 23, 2004: brief of Defendant's rejoinder.

April 26, 2004: the Arbitral Tribunal asks the parties whether they want a hearing.

May 5, 2004: the Plaintiff indicates that it does not want a hearing.

June 12, 2004: the Arbitral Tribunal states that neither party requests a hearing.

July 1, 2004: the Court decided to establish separate provisions.

November 16, 2004: the Secretariat of the Court invites the Arbitral Tribunal to resume its work related to the counterclaim.
The Arbitral Tribunal asks the party whether they wish to submit new allegations concerning the counterclaims.

November 25, 2004: the Plaintiffs request an accounting expert investigation based on a recent audit of the accounts.

November 27, 2004: the Arbitral Tribunal invites the Defendants to transmit the audit of the accounts.

December 1, 2004: the Plaintiff asks the Arbitral Tribunal to dismiss the petition for expert investigation requested by the Defendants.

December 3, 2004: the Defendants transmit a statement of accounts with the Plaintiff.

December 4, 2004: the Arbitral Tribunal invites the Plaintiff to indicate whether it wishes to comment on the statement of accounts submitted by the Defendants.

December 15, 2004: the Arbitral Tribunal declares the closing of the investigation of the case pursuant to article 22 of the arbitration Rules.

December 28, 2004: the Arbitral Tribunal invites the parties to submit a statement of the arbitration expenses and costs.

January 26, 2005: Answer of the Plaintiff with presentation of expenses and costs.

February 2, 2005: Answer of the Defendant with presentation of expenses and costs.

February 18, 2005: Detailed presentation by the Plaintiff of its expenses and costs.

The chronology of the proceedings was established in order to overview the main stages and disputes that occurred until the time this award was rendered. The Arbitral Tribunal has stressed the content of the documents considered most relevant in spite of the fact that some of the parties may attribute higher importance to other aspects of the proceedings. This chronology does not mention the exchanges and deliberations between the arbitrators that preceded the decisions of the Tribunal or the proceedings related to the financial aspects of the case.

*********

## 10. EXTENSIONS OF THE TERMS BY THE INTERNATIONAL COURT OF ARBITRATION

**Terms of Reference**

The original term of two months expired on May 7, 2002.

On April 12, 2002 the Court extended the term until June 30, 2002.

On June 14, 2002 the Court extended the term until August 31, 2002.

On August 9, 2002 the Court extended the term until October 31, 2002.

On October 11, 2002 the Court extended the term until December 31, 2002.

On December 13, 2002 the Court extended the term until February 28, 2003.

On February 6, 2003 the Court extended the term until April 30, 2003.

On April 11, 2003 the Court extended the term until June 30, 2003.

On June 13, 2003 the Court extended the term until August 31, 2003.

The Terms of Reference was signed by the parties and the Arbitral Tribunal on July 7, 2003.

**Final Award**

The original term of six months expired on January 7, 2004.

On January 5, 2004, the Court extended the term until July 31, 2004.

On July 8, 2004, the Court extended the term until October 31, 2004.

On October 15, 2004, the Court extended the term until January 31, 2004[sic].

On January 7, 2005, the Court extended the term until April 30, 2005.

On April 8, 2005, the Court extended the term until July 31, 2005.

*********

**LITIGIOUS POINTS**

**Litigious points resolved previously**

11. In the list of litigious points to be resolved mentioned in the Terms of Reference, points 2, 3 and 4 concerning the jurisdiction of the Arbitral Tribunal were the following:

"*2. Determine whether article 18 of the Contract which indicates the settlement of disputes by an Arbitral Tribunal is valid or whether it violates article 1004 of the Code of Civil Procedure of the Dominican Republic.*
*3. Determine whether the Arbitral Tribunal, acting according to the Arbitration Rules of the ICC International Court of Arbitration is competent to take cognizance of the dispute.*
*4. Determine whether or not CPB is obligated to submit its claims to the courts of the Dominican Republic.*"

These litigious points were resolved in the preliminary award of September 19, 2003, in which the following was decided:

"*...The exception of lack of jurisdiction submitted by the State and the Corporation is admissible; said exception of lack of jurisdiction is not juridically justified. Consequently, it is declared competent to decide in this dispute. It reserves its decisions on costs until the*

*final award."*

**12.** The fifth litigious point was the following:
*"5. Determine whether the absence of payment of the cost provision by CDEEE and the Dominican State prevents them from submitting defenses and counterclaims."*

This point lost its interest, and this Arbitral Tribunal need not resolve it, as a consequence of the payment made on November 12, 2004 by the Dominican State and the CDEEE of the separate provision for expenses established by the International Court of Arbitration, based on the counterclaims.

**Litigious points pending resolution**

**13.** Among the litigious points mentioned in the list, the first concerns the composition of the Arbitral Tribunal: *"Determine whether or not the designation of the arbitrator corresponding to CDEEE (legal successor of CDE) and the Dominican State, made by the ICC International Court violates article 18.5 of the contract which establishes that "each party will be entitled to choose one arbitrator and the third will be designated according to the rules of the International Chamber of Commerce of Paris, France (ICC)."*

This point was the object of a specific prior decision (see paragraphs 15 to 28 of this award).

**14.** The litigious points on the merits on which the Arbitral Tribunal must decide are the following:
*"6. Decide whether or not the Contract is absent in the absence of ratification by the National Congress of the Dominican Republic.*
*7. Determine whether article 13 of the Contract which exempts CPB from paying taxes is valid in the absence of approval by the National Congress of the Dominican Republic and decide on the consequences of its possible invalidity.*
*8. Determine, according to and in light of the contract, which are the obligations of each party and the remedies established in the event of default on these obligations.*
*9. Determine whether the State and/or the Corporation or the CPB have defaulted on these obligations.*
*10. If the State and/or the Corporation or CPB defaulted on their obligations, determine of what such default consisted and whether the Corporation or CPB acted in accordance with the procedures stipulated in the Contract and applicable laws.*
*11.Determine whether the appropriation of the pledge without complying with juridical formalities constitutes a default on the Contract and its legal system.*
*12. Determine whether the abandonment of the country by CPB without prior notice constitutes a violation of articles 1134 and 1184 of the Civil Code of the Dominican Republic.*
*13. Determine which are the remedies granted by the Agreement and the applicable laws to the victim*