IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAYMAN POWER BARGE I, LTD.,<br><br>Applicant,<br><br>v.<br><br>THE STATE OF THE DOMINICAN REPUBLIC, and CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTRICAS ESTATALES (formerly known as CORPORACIÓN DOMINICANA DE ELECTRICIDAD),<br><br>Respondents. | Civil Action No. 1:06CV01362 (RMC) |

**DECLARATION OF GEORGE K. FOSTER IN SUPPORT OF
APPLICATION TO CONFIRM FOREIGN ARBITRAL AWARD
AND IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS**

George K. Foster declares and states as follows:

1. I am an attorney duly admitted to practice in the District of Columbia, New York, and California, and am an associate in the law firm Dechert LLP in New York. My D.C. Bar number is 497152, my business address is 30 Rockefeller Plaza, New York, New York 10112, and my telephone number is (212) 698-3827. My practice focuses primarily on international arbitration and arbitration-related court litigation. My firm represents Applicant Cayman Power Barge I, Ltd. ("CPB") in the instant proceeding to confirm a foreign arbitral award (the "Award"). I have personal knowledge of the facts set forth herein, unless otherwise stated. I submit this Declaration in support of CPB's Application to confirm the Award, and in opposition to the Motion to Dismiss (the "Motion" or "Mot.") by Respondents the State of the Dominican Republic (the "Dominican Republic") and Corporación Dominicana de Empresas Eléctricas Estatales ("CDEEE"), formerly known as Corporación Dominicana de Electricidad ("CDE")

(collectively "Respondents").

### The Selection of the Arbitral Tribunal in the Underlying Arbitration

2.  In their Motion, Respondents' take issue with the process whereby the arbitral tribunal (the "Arbitral Tribunal") was empanelled in the underlying arbitration. Mot. at 15-17. In connection with our preparation of CPB's response to Respondents' Motion, my firm requested from the International Court of Arbitration of the International Chamber of Commerce (the "ICC Court") a Certificate attesting to the facts relating to the selection of the Arbitral Tribunal and the relevant ICC Rules of Arbitration ("the ICC Rules") under which the selection process was carried out. The ICC routinely issues Certificates of this sort relating to factual or administrative matters in ICC arbitrations upon request to interested parties in connection with court proceedings on ICC Awards. Such a Certificate was duly issued in response to our request on March 22, 2007, signed by Jennifer Kirby, the Deputy Secretary General of the ICC Court. A true and correct copy of that Certificate (the "ICC Certificate") is attached hereto as Exhibit A.

3.  The ICC Certificate provides a detailed summary of the events relating to the selection of the Arbitral Tribunal in this case, and confirms that the process complied fully with the ICC Rules, which the parties adopted to govern any disputes arising under their Power Purchase Agreement (the "PPA"). The PPA was attached as Exhibits A and B to the Declaration of Genevieve Hartel dated July 18, 2006 in support of CPB's Application ("Hartel Declaration"). These facts are also described in the Award at issue in this case, which was submitted as Exhibits F and G to the Hartel Declaration.

4.  Among other things, the ICC Certificate and the Award note that CPB challenged two arbitrator nominees proposed by Respondents in the underlying arbitration, and that these challenges were upheld by the ICC Court. ICC Certificate, ¶¶ 15-18; Award, ¶¶ 21-22.

5.  There is one important detail about the arbitrator selection process, however, that the ICC Certificate and the Award do not discuss: the *basis* for CPB's challenges to Respondents' arbitrator nominees. The basis for these challenges was that these nominees lacked the neutrality and independence required under the PPA and the ICC Rules. Pursuant to Article 18.5 of the PPA, the parties had agreed that any arbitrator appointed by the parties must not have any prior connections or business relations with either of the parties. The same basic requirement is set forth in Article 7(1) of the ICC Rules, which states that "[e]very arbitrator must be and remain independent of the parties involved in arbitration." A true and correct copy of the ICC Rules was attached as Exhibit C to the Hartel Declaration.

6.  In disregard of the above requirements, Respondents twice nominated arbitrators who had preexisting relationships with one or both Respondents. The first such nomination was of Dr. Rafael Tulio Pérez de León. On or about August 9, 2002, CPB challenged his appointment on the ground that he did not possess the required neutrality and independence due to his close professional relations with the attorneys and agents of Respondents. Attached hereto as Exhibit B is a true and correct copy of CPB's submission to the ICC Court of that date, which my firm obtained from Ms. Hartel, counsel for CPB in the underlying arbitration. A certified English translation is attached hereto as Exhibit C. The ICC Court accepted CPB's challenge to Dr. Pérez de León. ICC Certificate, ¶ 15; Award, ¶ 21.

7.  Respondents thereafter nominated Dr. Manuel V. Ramos as arbitrator. On or about October 4, 2002, CPB objected to this nomination on the grounds that he, too, did not possess the required neutrality and independence, based on the fact that he had served as an attorney for Respondents in a separate arbitration proceeding dealing with similar issues. Attached hereto as Exhibit D is a true and correct copy of CPB's submission to the ICC Court in

support of its objection, which my firm likewise obtained from Ms. Hartel. A certified English translation is attached hereto as Exhibit E. The ICC Court accepted this objection and declined to confirm Dr. Ramos as arbitrator. ICC Certificate, ¶ 18; Award ¶ 22.

8. Thereafter, following Respondents' failure to nominate another arbitrator candidate within the time period allotted by the ICC Court, the ICC Court exercised the authority granted to it under the ICC Rules to nominate an arbitrator on behalf of Respondents. ICC Certificate, ¶¶ 19-21; Award ¶¶ 22-23, 28.

### The Arbitral Tribunal's Preliminary Award

9. After the Arbitral Tribunal was empanelled, Respondents challenged the jurisdiction of the Arbitral Tribunal and the ICC Court. The Arbitral Tribunal considered and rejected this jurisdictional challenge in a Preliminary Award dated September 19, 2003 (the "Preliminary Award"), concluding that the parties' arbitration agreement was valid and that the parties' dispute was within the scope of that agreement. Attached hereto as Exhibit F is a true and correct copy of the Preliminary Award, which my firm obtained from Ms. Hartel. Attached as Exhibit G is a certified English translation.

### The ICC Court's Review of the Arbitral Tribunal's Awards

10. As is customary in ICC arbitration, the Arbitral Tribunal's Preliminary and Final Awards in this case were both reviewed and approved by the ICC Court before they became final. Review by the ICC Court is required for any award rendered in an ICC arbitration, pursuant to Article 27 of the ICC Rules. See Hartel Decl., Exhibit C. The ICC Court is a body comprised of more than 100 lawyers and scholars from all around the world, many of whom are considered leading experts in the field of international arbitration. This internal review mechanism is one of the distinctive features of ICC arbitration, and is widely considered to

contribute to the quality and enforceability of ICC awards by detecting potential errors or deficiencies in the draft awards before they become final and are released to the parties. This view has been expressed by the authors of the leading treatise on ICC arbitration. See W. Laurence Craig, William W. Park, and Jan Paulsson, INTERNATIONAL CHAMBER OF COMMERCE ARBITRATION 377 (2000) (observing that this internal review mechanism "is given much of the credit for the belief that over 90% of ICC awards are respected voluntarily by the parties, and that ICC awards have a very good record of enforcement by national courts whenever they are challenged"). A true and correct copy of the relevant section of this treatise is attached hereto as Exhibit H.

### Respondents' Request for a Stay Under Article VI of the Convention

11.   In this proceeding CPB seeks confirmation of the Award pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards dated June 10, 1958 (the "Convention"), which is codified at 9 U.S.C. § 201 et seq. A true and correct copy of the Convention is attached hereto as Exhibit I.

12.   In their Motion, Respondents requested, *inter alia*, that the Court stay this matter under Article VI of the Convention pending legal proceedings on the Award that they were purportedly planning to file in the Dominican Republic "within the next thirty days." (Mot. at 22). Article VI permits a court to "adjourn the decision on the enforcement of the award" in the event that "an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e)" of the Convention. Respondents contended in their Motion that it would be appropriate for the Court to adjourn these proceedings on the ground that – according to Respondents – a court in the Dominican Republic would be a "competent authority" within the meaning of Article V(1)(e).

13.  Subsequently, however, Respondents announced to the Court in a filing dated March 13, 2007 that they had decided *not* to pursue legal proceedings on the Award in the Dominican Republic. In light of that announcement, CPB understood that Respondents' request for a stay under Article VI had effectively become moot.

14.  I nevertheless contacted Respondents' counsel, Marvin Griff, the day after the above-referenced announcement in order to confirm that Respondents' request for an Article VI stay was no longer operative. Mr. Griff replied that his clients intended to persist with their request for an Article VI stay despite their decision not to pursue legal proceedings on the Award in the Dominican Republic. Following this conversation with Mr. Griff, I wrote him a letter confirming our discussion, a true and correct copy of which is attached hereto as Exhibit J. Mr. Griff did not make any response to that letter.

15.  In light of Respondents' refusal to withdraw their request for an Article VI stay, CPB deemed it prudent to research the relevant legal considerations and oppose the request in its response to Respondents' Motion.

### Proposed Judgment and Order

16.  A proposed Order granting CPB's Application and entering judgment thereon is attached hereto as Exhibit K.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 26, 2007 in New York, New York.

_____
George K. Foster

12695021