# FOSTER EXHIBIT H

# INTERNATIONAL CHAMBER of COMMERCE ARBITRATION

## Third Edition

W. Laurence Craig

William W. Park

Jan Paulsson

OCEANA PUBLICATIONS, INC. / DOBBS FERRY, NY



International Chamber of Commerce

*The world business organization*

# CHAPTER 20

# THE COURT'S SCRUTINY OF AWARDS

## 20.01    The Court's role

Unlike the rules of some arbitral institutions, the ICC Rules do not provide for appellate review by a second-tier organ within the institution. While such institutional review may be appropriate where the first-tier arbitrators are lay arbitrators acting with great speed, this is not the case in the ICC context where the sole arbitrator or chairman is chosen for his or her established competence as an international arbitrator. Furthermore, ICC arbitration cases by their nature tend to be more time consuming and call for more careful deliberation than trade-association arbitrations.

On the other hand, the institution has an interest in ensuring that awards bearing the ICC *cachet* have international currency and be entitled to execution in the largest possible number of states. In view of the fact that ICC arbitral proceedings may in principle take place in any country, and that decisions are rendered by arbitrators of diverse nationalities and background, it is important that there be a central authority having experience with recognition and enforcement practices throughout the world to aid the arbitrators in issuing reliable awards.

This role of unification and verification is played by the Court of Arbitration (aided by its Secretariat), as provided for in Article 27 of the Rules:

> Before signing any Award, the Arbitral Tribunal shall submit it in draft form to the Court. The Court may lay down modifications as to the form of the Award and, without affecting the Arbitral Tribunal's liberty of decision, may also draw its attention to points of substance. No Award shall be rendered by the Arbitral Tribunal until it has been approved by the Court as to its form.

Special note should be made of the careful choice of words regarding the Court's powers: "scrutiny of the award" (in French, "*examen de la sentence*"). They are intended to reflect the supervisory, rather than arbitral or judicial,

role of the Court. The award remains the product of the arbitral tribunal; if the Court feels substantive modifications are called for, it can only make suggestions to this effect to the arbitrators. The arbitrators cannot be forced to accept any modifications. (Since arbitrators cannot force the Court to approve their award either, there is a theoretical possibility of a deadlock; but this does not occur in practice.)

The make-up of the Court assures not only the availability of international expertise to assist in attaining optimal enforceability of the award, but it is also a guarantee of representative views in the international commercial community (see Section 2.03).

The procedures followed by the Court in scrutinizing awards merit attention. Prior to 1998, only the Court in plenary session could approve awards. This was the result of Article 11 of the prior version of the Internal Rules of the Court.[1] Now, under the power given to it by Article 4(5) of the 1998 Internal Rules, the Court has delegated to a three person committee of the Court the power to scrutinize and approve awards, which will allow earlier notification of a final award to the parties. Awards which raise particular problems or difficulties, and awards which did not receive a unanimous approval by a Committee of the Court, will continue to be scrutinized and approved at a plenary session of the Court.[2] In all cases the Secretariat will summarize for the members of the Court the procedure and circumstances of the case and award.

Where an award is to be presented to a plenary session of the Court, the Secretariat will ordinarily ask a member of the Court to act as rapporteur on such an award and to present it to the Court. Rapporteurs should be fluent in the language of the award and conversant with the law that governs the agreement, as well as any particularities of procedure either at the place of arbitration, or in jurisdictions likely to be relevant to any enforcement of the award. The rapporteur will ordinarily prepare both a written report (distributed to all members several days prior to the meeting) and an oral exposition for the meeting at which the award is considered.

The Secretariat's Counsel in charge of the file (see Section 2.04) is also available to assist the members of the Court, as is the Court's General Counsel, who studies all awards prior to the Court session at which the awards are discussed. Members of the Secretariat may not vote. However, the presence of Counsel of the Secretariat[3] may be most useful with respect to questions as to

[1]  Even then, however, routine awards (the so-called "B Awards") were presented to a three-person Committee of the Court for scrutiny. Where the Committee unanimously recommended approval, or other action, the recommendations were submitted to the whole Court, sitting in plenary session, but approval was considered only a formality.

[2]  See Robert Briner, The Implementation of the 1998 ICC Rules of Arbitration, 8 ICC BULL. 7, 9 (December 1997).

[3]  Internal Rules of the Court, Articles 1(1) and 1(2).

the precise status of the proceedings since they follow the file and have corresponded with the arbitrators, and frequently with counsel to the parties.

The Court spends considerable time in its scrutiny of awards. Some of the awards are, as one of the members of the Court put it, "so perfect that it calls for no comment other than the admiration of the members of the Court." Others give rise to lengthy discussions among the members, and subsequent correspondence between the Secretariat (acting upon instruction from the Court) and the arbitrators. Some arbitrators clearly feel that review by the Court is unnecessary and undesirable. The ICC believes, however, that this step is an important guarantee of the rights of the parties and of the reputation of the ICC arbitral process. It is given much of the credit for the belief that over 90% of ICC awards are respected voluntarily by the parties, and that ICC awards have a very good record of enforcement by national courts whenever they are challenged.

Article 27 reveals that in its scrutiny of the award the Court has both mandatory and advisory powers. The Court may "lay down" modifications as to the form of the award; it may merely "draw the [arbitral tribunal's] attention" to points of substance. A third power not specifically mentioned in Article 27, but explicit in Article 35, is that of assuring that the proceedings have respected the parties' fundamental right to be heard.