**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAYMAN POWER BARGE I, LTD.<br>c/o Corporate Filing Services Ltd.<br>PO Box 613 GT, 4th Floor Harbour Centre<br>Grand Cayman, Cayman Islands,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF THE DOMINICAN REPUBLIC, and CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTRICAS ESTATALES (formerly known as CORPORACIÓN DOMINICANA DE ELECTRICIDAD),<br><br>Defendants. | Civil Action No. 1:06CV01362 (RMC) |

**DEFENDANTS' REPLY TO APPLICANT CAYMAN POWER BARGE I, LTD.'S
MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS
APPLICATION TO CONFIRM A FOREIGN ARBITRAL AWARD AND IN
OPPOSITION TO RESPONDENTS' MOTION TO DISMISS**

The State of the Dominican Republic ("Dominican Republic") and Corporación de

Empresas Eléctricas Estatales ("CDEEE") (collectively "Defendants"), hereby submit their

Reply to Applicant Cayman Power Barge I, LTD.'s Memorandum of Points and Authorities in

Further Support of its Application to Confirm a Foreign Arbitral Award and in Opposition to

Respondents' Motion to Dismiss ("CPB Memorandum") and state as follows:

**INTRODUCTION**

First and foremost, Defendants desire to clarify their position with respect to the monies

they owe CPB. Defendants do not dispute that they should pay CPB for the power it supplied

Defendants. But Defendants have consistently argued in the past and continue to maintain that

the arbitration proceeding conducted before the International Court of Arbitration ("ICA") was a

wholly impermissible method through which CPB might establish and collect amounts owed to it. As set forth in Defendants' Special Entry of Appearance, Motion to Dismiss or, Alternatively, for Other Relief and Memorandum in Support of Motion ("Motion") and in this Reply, Defendants' opposition is based upon its judgment that the ICA proceedings were illegitimate, among other reasons, because the arbitration provisions under which the arbitration was brought were invalid. In this context, Defendants' opposition to CPB before this Court should be viewed as the insistence by a sovereign nation that the judicial system of the United States should not be used to further this injustice. This request is made by the Dominican Republic because of the importance of what lies at the heart of this dispute: Fundamental issues relating to the interpretation and application of Dominican Republic law respecting that country's sovereignty, Executive Branch authority and Constitutional rights.

Defendants are not suggesting that this Court take any action that would leave CPB without a fair opportunity for recovery. Defendants acknowledge that they would be subject to suit in a Dominican Republic court located in their domicile of Santo Domingo, Dominican Republic.[1] Notwithstanding their arguments regarding the nullity of the Power Purchase Agreement between CPB and Defendants ("PPA"), Defendants further acknowledge that Dominican Republic law allows CPB the right to a recovery under the Dominican Republic/civil law equivalent of unjust enrichment ("enriquecimiento sin causa").[2] Thus, CPB has a viable

---

[1]    *See* Article 1315 of the Dominican Civil Code and Article 59 of the Dominican Code of Civil Procedure which are included in **Exhibit A**.

[2]    *See, e.g.,* attached **Exhibits B-1** (Spanish) and **B-2** (English translation) which is a decision of the Dominican Republic's Supreme Court of Justice dated April 2, 2003. This case involved an illegal confiscation by the Dominican Republic of real estate which was later given to an oil company. The lower court recognized the illegality of the confiscation and of the owner's right to be compensated. Notably, the Dominican Supreme Court of Justice did not reverse the lower court's decision reasoning, in part, that the defendants had been unjustly enriched. *See also* Articles 1315, 1382 and 1383 of the Dominican Republic's Civil Code which are attached in **Exhibit A** (containing statutory provisions related to unjust enrichment under the Civil Code).

recourse to recover monies that are legitimately owed to it through an action brought before a competent court in the Dominican Republic.

## **ARGUMENT**

### *1.    This Court lacks jurisdiction and should grant Defendants' Rule 12(b) Motion.*

Defendants have previously argued in their Motion that both the PPA generally and Articles 18 and 19 specifically are invalid and null and void by operation of: Articles 3, 37.1, 37.19, 27.19, 46, 48, 55.10 and 110 of the Dominican Republic's Constitution; Article 1004 of the Dominican Republic's Code of Civil Procedure; and Articles 6, 1133 and 1172 of the Dominican Republic's Civil Code.[3] At bottom, the premise behind Defendants' Rule 12(b) Motion is that both the PPA (generally) and the provisions relating to waiver of immunity and arbitration and taxes (specifically) were invalid and therefore null and void under Dominican Republic law. For this reason, the arbitration award is invalid and there is no applicable Foreign Sovereign Immunities Act ("FSIA") exception (*i.e.,* that 28 U.S.C. § 1605(a)(6) is inapplicable). Thus, this Court lacks jurisdiction and CPB has failed to state a valid claim for relief.[4]

It is well settled that the FSIA "is 'the sole basis for obtaining jurisdiction over a foreign state in our courts.'" *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1161 (D.C. Cir. 2002) (*citing Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434 (1989). A foreign state is immune from Federal District Court jurisdiction unless one of the listed FSIA exceptions applies. *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1161 (D.C. Cir. 2002). "Immunity under the FSIA is not only immunity from liability, but immunity from suit." *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 305 (9th Cir. 1997).

---

[3]    *See* Defendants' Motion, pp. 6-11.

[4]    The validity of both the PPA (generally) and Articles 18 and 19 (specifically) also go to the heart of the Article V(1)(a) defense of the New York Convention which Defendants have raised in this matter.

"The *defense* of sovereign immunity may be raised at any time because, if valid, it means that the court lacks power to hear the case." *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1161 n.10 (D.C. Cir. 2002). Indeed, when state sovereign immunity is raised, a district court must address "the merits of the immunity question first in order to preserve the immunity that may be determined to exist." *In re Republic of Philippines*, 309 F.3d 1143, 1149 (9th Cir. 2002); *see also Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 706 (9th Cir. 1992) ("As a threshold matter, therefore, a court adjudicating a claim against a foreign state must determine whether the FSIA provides subject matter jurisdiction over the claim.") If immunity is found to exist, the matter must be dismissed.

Defendants are unaware of any case which has considered a federal district court's jurisdiction over a foreign state under the FSIA with respect to confirmation of a foreign arbitration award where the foreign state has asserted that the underlying agreement (both generally and specifically with respect to the arbitration and tax clauses) was void *ab initio* thereby depriving the court of jurisdiction. Neither has CPB identified any such case. Thus, Defendants' position appears to be one of first impression. Notwithstanding, analogous case law from this Court provides ample support for the request by Defendants to dismiss CPB's matter.

At the outset, Defendants note that parties will often file a Rule 12(b) motion seeking dismissal in opposing a motion to confirm a foreign arbitral award. *See, e.g., Termoria S.A. v. Electrificadora Del Atlantico S.A.*, 421 F.Supp.2d 87 (D.D.C. 2006); *see also Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 158 F.Supp.2d 377 (S.D. N.Y. 2001). A recent decision handed down by this Court strongly supports Defendants' Rule 12(b) motion. *See Dynamo v. Ovechkin*, 412 F.Supp.2d 24 (D.D.C. 2006).

In *Dynamo*, the Russian hockey club Dynamo sought to confirm a Russian arbitration award which held that its former player, Ovechkin, had breached his contract with Dynamo. The arbitration determination enjoined Ovechkin from playing hockey for any club other than Dynamo for the 2005-2006 season. Ovechkin moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) arguing that the Court lacked subject matter jurisdiction over Dynamo's claims because there was no written agreement to arbitrate. In considering the motion, the Court extensively analyzed the documents which purportedly constituted the agreement in writing. Ultimately, the Court concluded that there was no agreement to arbitrate as required by Article II of the New York Convention, notwithstanding the finding of the arbitration panel that a valid contract existed.[5] The Court granted Ovechkin's Rule 12(b) motion to dismiss.

The *Dynamo* decision is not an isolated instance in which a domestic court has determined that it lacked jurisdiction to address an arbitration matter. In *Dahiya v. Talmidge Int'l, Ltd.*, 2002 WL 31962151 (E.D. La. 2002), *reh'g granted*, 371 F.3d 207 (5th Cir. 2004), the court held that an action could not be removed to federal court under 9 U.S.C. § 205 (*i.e.,* that the court lacked jurisdiction over the matter). The court reasoned that the forum selection clause of the written arbitration agreement was invalid under Louisiana law and, consequently, that there was no provision for arbitration in a country that was a signatory to the New York Convention.

To be sure, federal courts will refuse to confirm arbitration awards on the basis that the underlying contract as a whole was null and void. For example, in *Calvello v. Yankton Sioux Tribe*, 899 F.Supp.431 (D.S.D. 1995), a former manager of a tribal casino applied for confirmation and enforcement of an arbitrator's award under the FAA. Although the Tribe's counsel participated in the underlying arbitration proceeding, the Tribe objected to enforcement

---

[5]    The Court did not consider whether those documents constituted a valid agreement under Russian contract law.

of the arbitration award because the contract at issue never received the necessary approvals. The Tribe contended, therefore, that the entire agreement, including the arbitration clause, was void. The court held that it had federal question jurisdiction, but that it needed to determine whether the lawsuit was barred under the doctrine of sovereign immunity. The court reasoned that the arbitration clause, if part of a valid contract, would be an unequivocal expression of the Tribe's waiver of sovereign immunity. *Id.* at 436. The court, however, held that the waiver of sovereign immunity in the arbitration clause was inoperable because the contract at issue was either: (a) a management agreement which required, but did not have, the approval of the Tribal General Council in accordance with the Tribe's By-Laws or of the National Indian Gaming Council pursuant to 25 U.S.C. § 2711; or (b) an employment contract over which the court did not have subject matter jurisdiction. The court held that if the contract was a management contract it was null and void and that the court could not enforce the arbitration award because the contract lacked the necessary approvals. *Id.*

In *A.K. Mgmt. Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785 (9th Cir. 1986), a management company ("AK") sought a declaratory judgment that an agreement with an Indian Tribe concerning bingo management on its reservation was valid. The contract did not contain an arbitration clause, but did contain a provision waiving sovereign immunity with respect to any action brought by AK to enforce or interpret the agreement. The Tribe argued that the management contract was void because it lacked necessary approvals. AK contended that the Tribe had an express and implied duty of good faith and fair dealing to seek the necessary approvals. AK pointed to specific contractual provisions whereby the Tribe expressly covenanted to act in good faith and use its best efforts to fulfill its obligations under the agreement. In addition, AK argued that the Tribe had an implied duty of good faith and fair

dealing that is incorporated into every contract. AK further asserted that "a party who prevents

fulfillment of a condition of his own obligation cannot rely on the condition to defeat his own

liability" and that the Tribe was "attempting to avoid its own contractual obligation by refusing

to seek . . . approval when . . . [the] approval is a condition precedent to the [Tribe's]

performance under the agreement." *Id.* at 788-89. The court held that regardless of the

persuasive force of the arguments, the governing law provided that a contract is null and void

without the necessary approvals --

> Therefore, it is logical to conclude that an agreement without . . . approval must
> be null and void in its entirety. No part of it may be enforced or relied upon
> unless and until . . . approval is given. . . . [A]pproval is an absolute prerequisite
> to the enforceability of the contract. To give piecemeal effect to a contract as
> urged by AK, would hobble the statute. The plain words of [the governing law]
> simply render this contract void in the absence of . . . approval. Since it is void, it
> cannot be relied upon to give rise to *any* obligation of good faith and fair dealing.
> Accordingly, we find the general principles do not impose a duty on the [Tribe] to
> seek . . . approval of the Agreement.

*Id.* at 789. Significantly, the court held that "the waiver of sovereign immunity is clearly part of

the Agreement, and is not operable except as part of that Agreement. Since the entire contract is

inoperable without . . . approval, the waiver is inoperable and, therefore, the tribe remains

immune from suit." *Id.*

The *Dynamo, Dahiya, Calvello,* and *A.K. Mgmt* decisions have direct application to this

matter. Specifically, *Dynamo* stands for the proposition that (a) this Court is free to consider the

underlying documents in determining whether jurisdiction exists, and (b) a Rule 12(b) motion is

an appropriate vehicle for dismissing an application to confirm a foreign arbitral award. *Dahiya*

supports the principle that if part of an arbitration provision is void, the district court is without

jurisdiction. The *Calvello* and *A.K. Mgmt* decisions establish that an agreement is null and void

and unenforceable in instances where a purported contract and/or waiver of sovereign immunity

of a sovereign nation does not receive proper approval even in instances where a party may have

failed to fulfill certain conditions precedent that resulted in the contract being unenforceable.

As set forth at pp. 6-11 of their Motion, Defendants have shown that the arbitration and

tax provisions and the entire PPA (including the waiver of sovereign immunity) are void under

Dominican Republic law.  Hence, there never was a valid arbitration agreement upon which CPB

could obtain an arbitration award against the Defendants.  Accordingly, the lack of a valid

agreement to arbitrate deprives this Court of jurisdiction over the Defendants.  Defendants' Rule

12(b) motion should be granted.[6]

## 2.    *The Court can vacate the arbitral award under the "manifest disregard" standard.*

Defendants seek vacatur under the common law "manifest disregard" standard for

vacating arbitral awards.  CPB contends that the Defendants' motion to vacate is misplaced and

untimely.[7]  But it is CPB's contention that is unavailing.

Contrary to CPB's contention, the "manifest disregard" standard for vacating an arbitral

award is not bounded by the confines of the Federal Arbitration Act ("FAA").  *See, e.g.,*

*LaPrade v. Kidder, Peabody & Co.,* 246 F.3d 702, 706 (D.C. Cir. 2001) ("*In addition to the*

---

[6]      Although the case was not cited by CPB, in *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S.Ct. 1204, 1210 (2006), the United States Supreme Court held that "[A] challenge to the validity of the contract as a whole, and not specifically the arbitration clause, must go to the arbitrator."  There are some obvious differences between *Buckeye* and the matter in this docket.  The Court in *Buckeye* was addressing a motion to compel arbitration rather than a motion to enforce an arbitral award.  Further, the arbitration at issue in *Buckeye* was domestic rather than international.  Defendants have located only one case in which *Buckeye* was applied in the context of enforcing a foreign arbitration award.  *See R.M.F. Global, Inc. v. Cattan*, 2006 WL 544294 at *4 (W.D.Pa. March 6, 2006) (holding that the plaintiff could not object to the confirmation of an international arbitration award on the ground that it was not afforded the opportunity to attack the validity of the agreement when the plaintiff voluntarily chose not to participate in the arbitration).  Even if *Buckeye* is deemed applicable to the case at hand, however, Defendants have made two separate challenges: a) that the arbitration and tax provisions of the agreement are void under Dominican Republic law; and b) that the PPA as a whole is void under Dominican law.  Thus, even under *Buckeye*, this Court may properly determine whether the arbitration agreement at issue is void and unenforceable because Defendants are specifically challenging the validity of the arbitration clause, and not just the PPA as a whole.

[7]      *See* CPB Memorandum, pp. 20, 37-40.

*limited statutory grounds on which an arbitration award may be vacated*, [*i.e.*, 9 U.S.C. § 10] *arbitration awards can be vacated* only *if they are in manifest disregard of the law*, or if they are contrary to some explicit public policy that is well defined and dominant and ascertained by reference to the laws or legal precedents.") (emphasis added and citations omitted); *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006) ("As a general proposition, a federal court may vacate an arbitration award only upon a showing of one of the grounds specified in the Federal Arbitration Act, *see* 9 U.S.C. § 10(a), *or upon a showing of certain limited common law grounds. The permissible common law grounds for vacating such an award...include...a manifest disregard of the law*.") (emphasis added); *Scott v. Prudential Securities, Inc.*, 141 F.3d 1007, 1017 (11th Cir. 1998) ("*In addition to the grounds for vacatur set out in the FAA*, the courts have recognized a number of non-statutory grounds that permit a district court to vacate an arbitration award. *[A] party may challenge an arbitration award without reliance on the FAA if the award is...(3) entered in 'manifest disregard of the law.'*") (emphasis added). These cases teach that the common law-created "manifest disregard" standard is *not* dependant upon and/or bounded by the FAA and, therefore, that the three month bar of 9 U.S.C. § 12 is inapplicable when a litigant seeks to vacate an arbitration award under that standard.

CPB argues that it is "well settled" that a United States court cannot vacate a foreign arbitral award. It goes so far as to claim that "case law . . . establishes *conclusively* that a U.S. court lacks the authority to vacate a foreign arbitral award."[8] Tellingly, however, CPB relies upon non-controlling law from the Third and Sixth Circuits.[9] The decisions handed down by the courts in this circuit, however, strongly suggest that manifest disregard is indeed a proper basis upon which to vacate a foreign arbitral award.

---

[8]     *Id.*, p. 2 (emphasis added).

[9]     *Id.*, p. 20.

This Court has previously considered vacatur of a foreign arbitral award in *In re Chromalloy Aeroservices*, 939 F.Supp. 907 (D.D.C. 1996). The *Chromalloy* decision considered the D.C. Circuit's decision in *Al-Harbi v. Citibank*, 85 F.3d 680 (D.C. Cir. 1996). While neither the *Chromalloy* nor *Al-Harbi* decisions resulted in a vacatur of the underlying award based upon each case's particular circumstances, it is noteworthy that (a) both decisions considered vacatur of a foreign arbitral award under the manifest disregard standard, and that (b) neither court indicated that it lacked authority to vacate such an award. Likewise, it is noteworthy that the Fifth Circuit in *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 290 (5th Cir. 2004) – a case heavily relied upon by CPB – stated that "[u]nless the [arbitral tribunal] manifestly disregarded the parties' agreement or the law, there is no basis to set aside the determination that Swiss procedural law applied" to an arbitration. In short, the *Chromalloy*, *Al-Harbi*, and *Karaha* decisions all support Defendants' argument that a federal district court does have authority to vacate a foreign arbitral award under the manifest disregard standard. Defendants' vacatur request should be granted for the reasons set forth in their Motion.

### 3.     *French law did not govern the arbitration clause.*

The Arbitration Panel incorrectly applied French law in considering the arbitration clause of the PPA. The terms of the PPA, which provide that the arbitration should be conducted according to ICC and Dominican Republic law, do not create a conflict; thus, the Panel should not have deferred to French law. CPB's defense of the Panel's decision in this regard is therefore unavailing.

Article 18 of the PPA sets forth the arbitration clause. Article 18.1 provides, in relevant part, that a dispute "will be referred to arbitration and finally resolved pursuant to the arbitration rules of the International Chamber of Commerce valid in Paris, France (The "ICC Rules")."

Article 18.4 further provides that "[a]ny arbitral tribunal constituted pursuant to this AGREEMENT must apply the Laws of the Dominican Republic and the generally accepted principles of International Law."

In construing these two provisions, the Arbitration Panel concluded that Article 18.4 conflicted with Article 18.1 and that "it must be confirmed that the contracting Parties did not designate, by mutual agreement, the law applicable to the arbitration agreement."[10]  The Arbitration Panel therefore applied the procedural law of Paris, France (the situs of the arbitration), stating "there is no element that allows the Court to infer that the Parties had any intention of applying any other law than that in effect in the seat of the arbitration."[11]

In reaching its decision, the Arbitration Panel blatantly – and deliberately – disregarded the plain language of the PPA and the understanding of the parties which clearly and unambiguously stated that the law of the Dominican Republic was to govern the arbitration in conjunction with the ICC rules.  Moreover, the Panel blatantly and deliberately disregarded its own rules.

The ICC Rules provide that "[t]he proceedings before the Arbitral Tribunal shall be governed by these Rules, *and where these rules are silent, by any rules which the parties or, failing them, the Arbitral Tribunal may settle on,* whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration."[12]  Therefore, not only do the ICC Rules permit reference to other law, they anticipate the need for the Tribunal to refer to national laws and assume that the parties may have agreed on which national law to be applied. In these circumstances, the Arbitration Panel's conclusion that the parties intended French law to

---

[10]     Preliminary Arbitral Award ¶ 29.

[11]     Preliminary Arbitral Award ¶ 30.

[12]     ICC Rules, Article 15 (emphasis added).

apply was wholly unsupported by the PPA and therefore was a flagrant error, arbitrary and capricious.

An analogous situation arose in the case of *Coleman & Co. Securities, Inc. v. The Giaquinto Family Trust*, 2000 WL 1683450 (S.D.N.Y. November 8, 2000). In *Coleman*, the choice of law provision located in the arbitration section of the agreement stated that "[a]ny arbitration under this agreement shall be conducted pursuant to the Federal Arbitration Act and the laws of the State of New York." The court stated: "petitioner argues that the parties' choice of both the FAA and New York law to govern their arbitration does not create any conflict or ambiguity in the agreement. I agree." *Id.* at *3. The court noted that the FAA contains no express preemptive provisions, and it does not reflect an intent to occupy the entire field of arbitration. Like the FAA, the ICC Rules do not evidence an intent to occupy the field of arbitration entirely, nor do they provide for the application of the law of the arbitral situs in direct contravention of the parties' agreement. Therefore, no conflict occurred when the parties provided that Dominican Republic law and the ICC Rules should govern the arbitration.

Moreover, the contract at issue in *Coleman* contained two choice of law provisions: "a general one" similar to Article 17 of the PPA, and "a specific one explicitly governing arbitration" (quoted above). *Id.* at *3. The *Coleman* court concluded that by including the arbitration choice of law provision, the parties intended to be bound by New York's arbitration rules. The court concluded that the opposing argument to this conclusion would "effectively read[ ] out of the agreements the parties' arbitration-specific choice of law clause." *Coleman*, 2000 WL 1683450 at *4.[13] That mistake is precisely the one made by the Arbitration Panel in

---

[13]    *See also Insurance Co. of North American v. ABB Power Generation, Inc.*, 925 F.Supp. 1053 (S.D.N.Y. 1996) (choice of law provision specified in arbitration clause of an agreement that also contained a general choice of law provision applied by court in order to resolve a dispute over statute of limitations questions in arbitration).

this case.

Agreements should be construed to give effect to the intent and wishes of the parties. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (It is a "cardinal principle of contract construction [ ] that a document should be read to give effect to all its provisions and to render them consistent with each other."). The parties intended for Dominican Republic law to apply to the substantive interpretation of the PPA and also for the Dominican Republic law to apply to the arbitration proceedings in conjunction with the ICC Rules. They made this intent known by providing for a general choice of law provision (Article 17) as well as a specific arbitration choice of law provision (Article 18). To read Article 18 as simply a general choice of law provision was contrary to the clear intent of the parties and rendered Article 17 superfluous.

But even if the PPA did not provide for the specific law to govern the arbitration, the Arbitration Panel incorrectly applied the law of the arbitral situs (France). Instead, it should have applied the law of the Dominican Republic, the location with substantial connection to the transaction and the dispute. In reaching its decision to apply French law, the Arbitration Panel noted that Paris was chosen as the seat of the arbitration because it was a neutral location.[14] Based upon this choice, the Arbitration Panel bewilderingly assumed – in spite of the plain and unambiguous language of Article 18.4 – that the parties did not intend for the law of the Dominican Republic to be applied to the arbitration.[15] Notably, such an assumption has been specifically rejected by at least one court.

In *Gotaverken Arendal A.B. v. Libyan General National Maritime Co.*, a dispute arose regarding the purchase of vessels by a Libyan company from a Swedish shipyard. In accordance

---

[14]    Preliminary Arbitral Award ¶ 30.

[15]    Preliminary Arbitral Award ¶ 30.

with the purchase agreement, the arbitration took place in Paris under the ICC Rules. The parties did not designate the applicable procedural law. The arbitrators ruled in favor of the Swedish party and the Libyan company appealed to the Paris Court of Appeals. The court noted that Paris was chosen as the site of arbitration for its neutrality and that France had no relationship to the dispute. In these circumstances, the court found that the choice of France as the seat of the arbitration could not be considered "an implicit expression of the parties' intent to subject themselves, even subsidiarily, to French procedural law." *See* Jan Paulsson, *Arbitration Unbound: Award Detached from the Law of its County of Origin*, 30 Int'l & Comp. L.Q. 358, 385-387 (1981) (attaching an English translation of the operative part of the French judgment).

Defendants recognize that the application of the arbitral situs' procedural law may be justified if the forum has a significant interest in the dispute (*i.e.,* if one of the parties is from the forum or if the underlying events occurred in the forum). But as one commentator has aptly stated: "[w]hen sitting in a forum unrelated to the proceedings, the arbitrator is advised to adopt the *lex arbitri* of one of the jurisdictions having a significant relationship with the arbitration. Alternatively, an arbitrator could conduct the proceedings under the law governing the merits of the dispute so that all aspects of the dispute would be governed by a single legal system." Vitek Danilowicz, *The Choice of Applicable Law in International Arbitration*, 9 Hastings Int'l & Comp. L. Rev. 235, 254 (1986). Because Paris was presumably chosen merely for its neutrality, the Arbitration Panel should have applied Dominican Republic procedural law, either because it is the only location with a significant relationship to the parties and the underlying dispute or because Dominican Republic law governed the substantive merits of the dispute.

Finally, CPB's reliance on generally established principles of international arbitration as a means of avoiding the application of Dominican Republic law is unavailing.[16] As set forth above, the arbitration, sovereign immunity and tax provisions (specifically) and the PPA (generally) were void *ab initio* as being in conflict with Dominican Republic law. Application of non-binding principles of international law cannot bring to life an otherwise dead arbitration provision.[17]

4.     ***The arbitration, waiver of immunity and tax provisions (specifically) and the PPA (generally) are invalid and unenforceable under Dominican Republic law.***

CPB argues that the arbitration provision would be valid and enforceable if Dominican Republic law were applied.[18] In principal support of this argument, CPB relies upon the Declaration of Sara V. Sicard, a practicing attorney in the Dominican Republic. Sicard – an advocate for CPB presumably being paid by CPB – has rendered opinions which, on their surface, appear favorable to CPB. But a closer reading reveals that the substantive portions of Sicard's Statement actually *favor Defendants*.

---

[16]     CPB Memorandum, pp. 23-27.

[17]     CPB's reliance upon the Declaration of George A. Bermann for the proposition that principles of international law would prevent Defendants from invoking their own law to avoid their obligation to arbitrate is misplaced. Neither CPB nor Bermann's Declaration cites any controlling authority from either the United States or the Dominican Republic that requires this Court to follow "principles of international law." Absent an applicable and binding treaty to the contrary, neither this Court nor the Dominican Republic is legally bound by such principles. At the very most, "principles of international law" are secondary and nonbinding authority that may be cited for persuasive purposes only. *See, e.g., TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 302 (D.C. Cir. 2005); *see also Martinez-Lopez v. Gonzales*, 454 F.3d 500, 502-03 (5th Cir. 2006).

The principles of international comity provide useful guidance in these circumstances. "International comity…is the degree of deference a domestic forum should pay to the act of a foreign government not otherwise binding on the forum." *Laker Airways Ltd v. Pan American World Airways, Inc.*, 604 F.Supp. 280, 291 (D.D.C. 1984). Application of those principles suggest that when faced with the competing laws of a foreign sovereign nation and the nonbinding standards of international norms, United States courts should grant greater weight and deference to the laws and regulations of the foreign sovereign – particularly when such laws and regulations are the product of a democratic system such as that of the Dominican Republic. *See generally id.* at 292 (listing governing factors to be considered when the issue of international comity is raised).

[18]     CPB Memorandum, pp. 29-31.

Defendants agree with Sicard when she states that enacted law is "overwhelmingly" the most important source of primary law in the Dominican Republic.[19]  Likewise, Defendants agree that "Dominican judicial decisions have de facto weight for the same reasons that underlie the common law doctrine of *stare decisis*."[20]  Defendants further agree that secondary sources of law "*may* have weight *when* primary sources are absent, unclear, or incomplete, but they are *never* binding, and they are *neither necessary nor sufficient* as the basis for a judicial decision."[21]  In short, Defendants are in agreement that the Dominican legal hierarchy is similar to that of the United States:  That is, statutes are preeminent, judicial decisions carry de facto weight and create *stare decisis*, and secondary sources are persuasive but not binding.

Sicard cites Article 1004 of the Dominican Code of Civil Procedure which prohibits arbitration involving the State or national property.[22]  She then notes that subsequent Dominican legislation has partially modified Article 1004 to permit State participation in a domestic context.[23]  *Critically, however, Sicard does not cite any subsequent legislation that supersedes Article 1004's prohibition against arbitration involving the State or national property.  Sicard, moreover, concedes that she is unaware of any Dominican civil court decisions that have addressed application of Article 1004 in an international arbitration context.[24]  It is also especially revealing that she observes that there is no parallel provision to Article 1004 under*

---

[19]    Sicard Declaration, ¶ 8.

[20]    Sicard Declaration, ¶ 9.

[21]    Sicard Declaration, ¶ 8 (emphasis added).

[22]    Sicard Declaration, ¶ 23.

[23]    Sicard Declaration, ¶ 24.

[24]    Sicard Declaration, ¶ 25.

*French law.*[25] Thus, Sicard's contentions regarding the scope of Article 1004 are nothing more than *ipse dixit* voiced by CPB's own paid advocate. To be sure, Sicard's subsequent reliance on French law is misguided (as was the Arbitration Panel's) because Article 1004 is a wholly unique and distinct feature of Dominican Republic law.

Sicard's statements that the State and the CDEEE have entered into other energy related contracts containing arbitration and waiver of immunity provisions are irrelevant.[26] Under Sicard's analysis, the enacted law is preeminent in the Dominican Republic. Article 1004 of the Dominican Republic's Code of Civil Procedure explicitly prohibits arbitration involving the State or its national property (which would include CDEEE). As attested by Sicard, this Article has *only* been amended to permit arbitration in the domestic context.[27] Article 3 of the Constitution explicitly prohibits any of the sovereign powers incorporated under the Constitution (such as the Executive Branch or Congress) from "realiz[ing] or caus[ing] to be realized any acts which constitute direct or indirect intervention in the internal or external affairs of the Dominican Republic." Moreover, Articles 6, 1133 and 1172 of the Dominican Civil Code explicitly prohibit contracts which seek to contravene existing law. Similar restrictions are imposed under Dominican Republic law in connection with exemptions or exonerations from taxes. *See* Motion, pp. 9-11. Because the arbitration, waiver of immunity and tax provisions (specifically) and the PPA (generally) contravene Dominican Republic law, they are null and void, among other reasons, by operation of Articles 46 and 48 of the Dominican Constitution. Thus, even under Sicard's analysis, the preeminence of enacted law in the Dominican system means no

---

[25]    Sicard Declaration, ¶ 26.

[26]    Sicard Declaration, ¶ 33-39.

[27]    Sicard Declaration, ¶ 24.

established practice or custom can somehow validate a contract that directly contravenes established law.[28]  That similar provisions may have been included in other energy related contracts is therefore of no moment.

It is undisputed that the PPA was the result of actions taken by the Executive Branch which were never approved by Congress.  As Defendants have shown, these actions were improper and contravened Dominican Republic law and, accordingly, nullified the PPA *ab initio*.  Notably, when the Dominican Republic's Executive Branch has previously acted unilaterally and in contravention of established law, the Dominican Supreme Court has not hesitated in striking down and nullifying such acts.[29]

The result argued here by Defendants is not "specious" or a "cynical and bad faith" attempt to avoid a debt that arose out of the PPA as CPB overzealously asserts.[30]  Indeed, Defendants maintain that CPB's proper judicial recourse is to seek payment through a Dominican Republic court.  Defendants have not cited any authority that would ultimately prevent CPB from recovering monies it is owed if CPB were to pursue its claim before the Dominican Republic courts.  But as a matter of law, CPB cannot recover its debt via an arbitration proceeding that was prohibited by the law that governed the commercial transaction between the parties.  Because the "agreement is not valid under the law to which the parties have

---

[28]    This result is no different than analogous situations that occur – sometimes with great frequency – in the United States.  For example, it is an undeniable fact that motorists throughout the United States impermissibly "run" red lights and stop signs each day.  While the practice may be common, it does not make such violations lawful.

[29]    *See, e.g.,* attached **Exhibit C** (Spanish version) and **Exhibit D** (English version) of a October 1, 2003 decision of the Dominican Republic's Supreme Court of Justice which declared as unconstitutional part of a presidential decree which had unilaterally (and without Congressional authorization) imposed a 10% surcharge on various items.  *See also* Article 4 of the Dominican Republic Constitution (as set forth in **Exhibit A**) which establishes clear divisions between the legislative and executive powers.

[30]    CPB Memorandum, p. 3.

subjected it" (Article V.1(a) of the New York Convention), the arbitration was null. CPB's

Application must therefore be denied.

> **5.    CPB's Application should be denied because the composition of the Arbitral Panel was not in accordance with the arbitration provision of the PPA.**

CPB argues that the Arbitration Panel was properly constituted under the PPA and ICC

rules.[31]  Yet despite its assertions, CPB neither denies nor contests that the Arbitral Tribunal

unilaterally and inexplicably only gave Defendants a mere seven days to propose a new

arbitrator, after denying Defendants' second requested arbitrator.  Nor does CPB disagree that

the Defendants' third proposed arbitrator – who, by any standard, was proposed promptly – was

nonetheless summarily rejected by the Tribunal.  CPB suggests that the Tribunal's decision to

deny Defendants' their right to appoint an arbitrator was Defendants' own fault, arising from

Defendants' own "misconduct."[32]  At bottom, however, CPB cannot refute that Defendants were

unable to select an arbitrator of their choosing as expressly contemplated by the parties under the

arbitration provision of the PPA.  For the reasons set forth more fully in their Motion,

Defendants were unduly prejudiced by this decision of the Tribunal and therefore, CPB's

requested confirmation should be denied under Article V(1)(d) of the New York Convention.

> **6.    Public policy warrants denial of CPB's Application.**

This Court should also deny CPB's Application on the basis of Article V(2)(b), the public

policy exception of the New York Convention.  Even if this defense were to be construed

narrowly consistent with the cases relied upon by CPB, the public policy exception remains a

proper bar to CPB's recovery.

---

[31]    CPB Memorandum, pp. 32-33.

[32]    CPB Memorandum, p. 6.

At the very heart of this case are the issues of (a) whether the rule of law controls its outcome (*i.e.*, should controlling Dominican law apply), and (b) whether actions taken in violation of the law of another country can be legitimized through the legal system of the United States. Principles of international comity support Defendant's request that this Court should deny CPB's confirmation request --

> [Under comity t]he interests of both forums are advanced--the foreign court because its laws and policies have been vindicated; the domestic country because international cooperation and ties have been strengthened. *The rule of law is also encouraged, which benefits all nations.* Comity is a necessary outgrowth of our international system of politically independent, socio-economically interdependent nation states....[N]o nation can expect its laws to reach further than its jurisdiction to prescribe, adjudicate, and enforce. Every nation must often rely on other countries to help it achieve its regulatory expectations. *Thus, comity compels national courts to act at all times to increase the international legal ties that advance the rule of law within and among nations.*"

*Laker Airways Ltd. v. Pan American World Airways, Inc.*, 604 F.Supp. 280, 291-92 (D.D.C. 1984) (*citing Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984)) (emphasis added). Defendants urge this Court to give full consideration to these comity principles in the context of the important issues at the center of this dispute. Such an evaluation will lead to the denial of CPB's Application as a matter of public policy.

### 7. *The Court should stay a ruling on this matter.*

Defendants have decided not to pursue a declaratory determination in the Dominican Republic. But that does not mean that a stay should not be issued.

Matters central to the Dominican Republic's sovereignty, Executive Branch authority and Constitutional requirements are involved in CPB's confirmation request. As corroborated by the Sicard Declaration, at the very least, application of Article 1004 of the Dominican Code of Civil Procedure in the context of an international arbitration involving the State and its property is an

issue of first impression that Dominican Republic courts have not considered. Because of the potential widespread impact of this Court's ruling, prudence and principles of comity strongly suggest that if this Court is not prepared to refuse to confirm the award, the Court should nonetheless stay a ruling on CPB's Application and either (a) send certified questions of law to the Supreme Court of the Dominican Republic (similar to the process by which United States federal courts certify questions of law to the highest courts of the states), or (b) allow CPB the opportunity to pursue recovery of monies it is owed in a Dominican Republic court.

In either event, staying a ruling on this matter for these purposes would have a two-fold benefit. First, it would put the key issues of Dominican Republic law upon which this dispute rests squarely in the hands of a Dominican Republic court. Second, a stay would preserve CPB's ability to seek confirmation of the arbitral award at a future date in the event that CPB were to be denied a fair opportunity to pursue recovery of its debt.

### 8. *Defendants should not be ordered to pay CPB's costs and attorneys' fees in connection with this proceeding.*

CPB requests this Court to order Defendants to reimburse CPB for its costs and fees incurred in responding to Defendants' Motion.[33] As a basis for this request, CPB points to Defendants' arguments related to (a) lack of jurisdiction, (b) failure to state a claim, (c) vacatur, and (d) stay of proceedings. But as set forth above, all of Defendants arguments have been made in good faith.

With respect to their Rule 12(b) Motion, Defendants have argued reasonably and in good faith that the PPA (generally) and the arbitration, immunity waiver and tax provisions (specifically) were void *ab initio*. Because of this nullity, the arbitration should never have occurred, and thus there is no valid basis for jurisdiction under the FSIA. In support of their

---

[33]    CPB Memorandum, pp. 42-43.

argument, Defendants have cited the *Dynamo, Dahiya, Calvello,* and *A.K. Mgmt* decisions which support the position taken by Defendants. Defendants believe this is a matter of first impression.

With respect to their vacatur argument, Defendants have reasonably and in good faith relied upon law from the D.C. Circuit to support their argument that (a) the "manifest disregard" standard operates independently from the FAA, and that (b) vacatur in this instance is proper. At most, this issue appears to be unsettled in the D.C. Circuit.

Finally, Defendants have reasonably and in good faith recommended that this Court stay confirmation of CPB's application to enable either (a) questions of law to be certified to the Dominican Republic's Supreme Court, or (b) CPB the opportunity to pursue recovery of amounts it is owed in a Dominican Republic court while simultaneously preserving CPB's ability to seek confirmation of the arbitral award at a future date in the unlikely event that CPB is denied its "day in court." Given both the profound and far-reaching impact of the issues involving Dominican Republic law, and the fact that CPB's rights would be preserved, Defendants' stay request is a reasonable and good faith proposal designed to permit an appropriate and fair resolution of this dispute.

## CONCLUSION

**WHEREFORE,** for the foregoing reasons and for the reasons set forth in their Motion,

Defendants request that this Court dismiss CPB's Application or, alternatively, provide such

other relief as Defendants have requested.

Respectfully submitted,

/s/ _____

Marvin T. Griff (D.C. Bar No. 423839)
Michael Fielding (D.C. Bar Admission – Motion to
    appear *pro hac vice* granted)
Blackwell Sanders Peper Martin, LLP
750 17th St. N.W., Suite 1000
Washington, D.C. 20006-3901

*Attorneys for Defendants The State of the*
*Dominican Republic and Corporación Dominicana*
*de Empresas Eléctricas Estatales*

Dated: April 10, 2007

## Certificate of Service

I herby certify that on this 10th day of April, 2007, a true and correct copy of the above
and foregoing was served by electronically filing it with the Court using the CM/ECF system,
which sent notification to all parties of interest participating in the CM/ECF system.

/s/ _____

Washington, DC 20006-2401

*Attorney for Defendants The State of the Dominican*
*Republic and Corporación Dominicana de*
*Empresas Eléctricas Estatales*

23

# Exhibit A

## Article 1315 of the Civil Code of the Dominican Republic

*Spanish*

Art. 1315.- El que reclama la ejecución de una obligación, debe probarla.
Recíprocamente, el que pretende estar libre, debe justificar el pago o el hecho que ha
producido la extinción de su obligación.

*English*

Art. 1315.- One who demands the fulfillment of an obligation must be able to prove such
obligation. Likewise, one who claims to be free must be able to justify the payment or the
deed which has produced the termination of that obligation.

I certify this to be a true and accurate translation
of the original document presented to me.

*Nancy T. Hancock*

Nancy T. Hancock, Notary Public
My commission expires 1/30/10.

Director, Language Company Translations, LC
Norman, Cleveland County, OK

NOTARY PUBLIC
IN AND FOR STATE OF OKLAHOMA

OFFICIAL SEAL
Nancy T. Hancock
Commission # 06001189
Expires January 30, 2010

Código Civil de la República Dominicana
Civil Code of the Dominican Republic


Art. 1382.- Cualquier hecho del hombre que causa a otro un daño, obliga a aquel por cuya culpa sucedió, a repararlo

Article 1382.- Any deed by an individual which causes harm to another obliges that individual whose fault it was to provide satisfaction for it.


I certify this to be a true and accurate translation
of the original document presented to me.

Nancy T. Hancock, Notary Public
My commission expires 1/30/10.

Director, Language Company Translations, LC
Norman, Cleveland County, OK

OFFICIAL SEAL
NOTARY PUBLIC
IN AND FOR
STATE OF
OKLAHOMA
Nancy T. Hancock
Commission # 06001189
Expires January 30, 2010

Código Civil de la República Dominicana
Civil Code of the Dominican Republic

Art. 1383.- Cada cual es responsable del perjuicio que ha causado, no solamente por un hecho suyo, sino también por su negligencia o su imprudencia.

Article 1383.- Each person is responsible for damage he has caused, no only by his deeds, but also by his negligence or imprudence.

I certify this to be a true and accurate translation
of the original document presented to me.

Nancy T. Hancock, Notary Public
My commission expires 1/30/10.

Director, Language Company Translations, LC
Norman, Cleveland County, OK

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF OKLAHOMA
Nancy T. Hancock
Commission # 06001189
Expires January 30, 2010

### Article 59 of the Code of Civil Procedure of the Dominican Republic

*Spanish*

Art. 59.- En materia personal, el demandado será emplazado para ante el tribunal de su domicilio: si no tuviere domicilio, para ante el tribunal de su residencia: si hubiere muchos demandados, para ante el tribunal del domicilio de uno de ellos, a opción del demandante. En materia real, para ante el tribunal donde radique el objeto litigioso. En materia mixta, para ante el tribunal donde radique el objeto litigioso, o para ante el del domicilio del demandado. En materia de sociedad, en tanto que exista, para ante el tribunal del lugar en que se halle establecida. En materia de sucesión, para ante el tribunal en donde se haya abierto ésta, en los casos siguientes: 1o. en las demandas entre herederos, hasta la divisoria inclusive; 2o. en las demandas intentadas por los acreedores del difunto antes de la divisoria; y 3o. en las relativas a la ejecución de lasdisposiciones testamentarias, hasta la sentencia definitiva. En materia de quiebra, para ante el tribunal del domicilio del quebrado. En materia de garantía, para que el tribunal ante el cual se halle pendiente la demanda originaria. Finalmente, en el caso de elección de domicilio, para la ejecución de un acto, para ante el tribunal del domicilio designado, o el del domicilio real del demandado, de conformidad al artículo 111 del Código Civil.

*English*

Article 59.- In the case of persons, the defendant shall be summoned before the court of his domicile: if he has no such domicile, before the court of his residence: if there are many defendants, before the court of the domicile of one of them, at the option of the plaintiff. In the case of real matter, before the court where the object of litigation is located. In the case of mixed matter, either before the court where the object of litigation is located or before the court of the domicile of the defendant. In the case of corporate matter, if such exists, before the court of the place in which it is established. In the case of succession, before the court in which it has been brought, in the following cases: 1st, for petitions among heirs, until the inclusive division; 2nd, for petitions undertaken by creditors of the defunct, before the division; and 3rd, on those relative to the execution of testamentary dispositions, until the definitive judgment. In cases of bankruptcy, before the court of the domicile of the bankrupt person. In cases of guaranty, before the court before which the original petition is pending. Finally, in the case of selection of domicile, for the execution of an act, before the court of the designated domicile, or the real domicile of the defendant, in conformity with Article 111 of the Civil Code.

I certify this to be a true and accurate translation of the original document presented to me.

*Nancy T. Hancock*
Nancy T. Hancock, Notary Public
My commission expires 1/30/10.

Director, Language Company Translations, LC
Norman, Cleveland County, OK

NOTARY PUBLIC
IN AND FOR
STATE OF
OKLAHOMA

OFFICIAL SEAL
Nancy T. Hancock
Commission # 06001189
Expires January 30, 2010

**Constitución de la República Dominicana de fecha 25 de julio del 2002**
**Constitution of the Dominican Republic, dated July 25, 2002**

Artículo 4.- El gobierno de la Nación es esencialmente civil, republicano, democrático y representativo. Se divide en Poder Legislativo, Poder Ejecutivo y Poder Judicial. Estos tres poderes son independientes en el ejercicio de sus respectivas funciones. Sus encargados son responsables y no pueden delegar sus atribuciones, las cuales son únicamente las determinadas por esta Constitución y las leyes.

Article 4.- The government of the Nation is essentially civil, republican, democratic and representative. It is divided into a Legislative Power, an Executive Power, and a Judicial Power. These three powers are independent in the exercise of their respective functions. Those in charge bear the full responsibility and cannot delegate their duties, which are solely those determined by this Constitution and by laws.

I certify this to be a true and accurate translation
of the original document presented to me.

*Nancy T. Hancock*
Nancy T. Hancock, Notary Public
My commission expires 1/30/10.

Director, Language Company Translations, LC
Norman, Cleveland County, OK

NOTARY
PUBLIC
IN AND FOR
STATE OF
OKLAHOMA

**OFFICIAL SEAL**
Nancy T. Hancock
Commission # 06001189
Expires January 30, 2010

# Exhibit B-1

Consulta sentencias de la Suprema Corte de Justicia

Fecha           2/4/2003
Materia         Civil
Recurrente (s)  Amelia Paiewonsky Batlle de Gómez.
Abogado (s)     Licdos. Alfonso Mendoza, Dilia Leticia Jorge Mera y Juan Manuel Ubiera.
Recurrido (s)   Refinería Dominicana de Petróleo, S. A. (REFIDOMSA).
Abogado (s)     Dres. Wenceslao Vega B., Luis Eligio Carela Valenzuela y Miguel A. García Vargas.

**CAMARA CIVIL Casa Audi**

**encia pública del 2 de**

.

ública del 2 de abril del 2003.

Preside: Rafael Luciano Pichardo.

Dios, Patria y Libertad

En Nombre de la República, la Cámara Civil de la Suprema Corte de Justicia, actuando como Corte de Casación, ha dictado la sentencia siguiente:

Sobre el recurso de casación interpuesto por Amelia Paiewonsky Batlle de Gómez, dominicana, casada, de quehaceres domésticos domiciliada y residente en esta ciudad, portadora de la cédula No. 001-0097896-4 contra la sentencia No. 163/939 de fecha 12 de marzo de 1998, dictada por la Cámara Civil de la Corte de Apelación de Santo Domingo en funciones de Tribunal de Confiscaciones, cuyo dispositivo se copia más adelante;

Oído al alguacil de turno en la lectura del rol;

Oído en la lectura de sus conclusiones al Lic. Alfonso Mendoza, por sí y por los Licdos. Dilia Leticia Jorge Mera y Juan Manuel Ubiera, abogados de la parte recurrente;

Oído el dictamen del Magistrado Procurador General del República, el cual termina: "Que procede rechazar el recurso de casación de que se trata, por los motivos expuestos";

Visto el memorial de casación depositado en la Secretaría General de la Suprema Corte de Justicia, el 28 de agosto del 2001, suscrito por los Licdos. Dilia Leticia Jorge Mera y Juan Manuel Ubiera, en el cual se proponen los medios de casación que se indican más adelante;

Visto el memorial de defensa depositado en la Secretaría General de la Suprema Corte de Justicia, el 3 de octubre del 2001, suscrito por los Dres. Wenceslao Vega B., Luis Eligio Carela Valenzuela y Miguel A. García Vargas, abogados de la recurrida Refinería Dominicana de Petróleo, S. A. (REFIDOMSA);

Vista la Ley No. 25 de 1991, modificada por la Ley No. 156 de 1997, y los artículos 1, 20 y 65 de la Ley sobre Procedimiento de Casación;

La CORTE, en audiencia pública del 6 de febrero del 2002, estando presente los Jueces: Rafael Luciano Pichardo, Presidente; Eglys Margarita Esmurdoc, Margarita A. Tavares, Ana Rosa Bergés Dreyfous y José Enrique Hernández Machado, y después de haber deliberado los jueces que firman al pie;

Considerando, que en la sentencia impugnada y en los documentos a que ella se refiere, consta que con motivo de una demanda en reivindicación de inmueble, interpuesta por Amelia Margarita Paiewonsky Batlle de Gómez contra el Estado Dominicano, The Shell Company (W. I.) y la Refinería Dominicana de Petróleo, S. A., la Cámara Civil de la Corte

de Apelación de Santo Domingo, en funciones de Tribunal de Confiscaciones dictó, el 12 de marzo de 1998, la sentencia ahora impugnada con el siguiente dispositivo: "**Primero:** Acoge como buena y válida en cuanto a la forma la demanda en reivindicación de la Parcela No. 214 del Distrito Catastral No. 8 de San Cristóbal, interpuesta por la señora Amelia Margarita Paiewonsky Batlle de Gómez contra el Estado Dominicano, la Refinería Dominicana de Petróleo, S. A. y The Shell Company (West Indies) Limited, por haber sido interpuesta conforme a la ley; **Segundo:** Excluye, en cuanto al fondo, a la Refinería Dominicana de Petróleo, S. A. y The Shell Company (West Indies) Limited, porque la responsabilidad por la confiscación del inmueble aludido es exclusivamente del Estado Dominicano; **Tercero:** Declara que el inmueble reclamado no puede ser restituido o devuelto a su legítima dueña, señora Amelia Margarita Paiewonsky Batlle de Gómez, por entrar dicho inmueble dentro de las previsiones del artículo 37 de la Ley No. 5924 del 26 de mayo de 1962; **Cuarto:** Declara que la demandante, señora Amelia Margarita Paiewonsky Batlle de Gómez, tiene derecho a una compensación; **Quinto:** Comisiona al Magistrado Dr. Marcos Ricardo Álvarez Gómez, Juez de este tribunal, para que las partes en causa se pongan de acuerdo ante dicho magistrado, respecto del monto y de las modalidades de la compensación; **Sexto:** Fija la audiencia del día lunes 11 de mayo de 1998, a las diez horas de la mañana (10:00) en Cámara de Consejo, para que las partes concurran ante el Magistrado comisionado a los fines indicados en el ordinal quinto de la presente decisión; **Séptimo:** Compensa las costas";

Considerando, que la recurrente alega, en apoyo de su recurso de casación el siguiente Único Medio: Falta de motivos y consiguiente violación al artículo 141 del Código de Procedimiento Civil;

Considerando, que en el desarrollo de su único medio de casación, la recurrente alega en síntesis, que el Estado Dominicano se apoderó de la Parcela No. 214 del Distrito Catastral No. 8 de San Cristóbal, de su propiedad, mediante un abuso de poder, ya que dicha recurrente no había sido confiscada, ni enajenado dicho inmueble; que la aludida parcela fue aportada por el Estado Dominicano para la constitución de la Refinería Dominicana de Petróleo, S. A., en la que participó la Shell Company (W. I.) recibiendo el Estado Dominicano y la dicha entidad acciones en partes iguales; que, por el hecho de asociarse en el indicado acto ilícito, la hoy recurrente demandó al Estado Dominicano a la Refinería Dominicana de Petróleo, S. A., y a la Shell Company (W. I.); pero a pesar de los planteamientos de derecho, y los hechos alegados por la recurrente, la Corte a-qua excluyó de la demanda a la Shell Company y a la Refinería Dominicana de Petróleo, S. A., por considerar que sólo el Estado Dominicano es responsable frente a la recurrente, sin dar motivo alguno;

Considerando, que consta en la sentencia impugnada respecto de la incompetencia del Tribunal de Confiscaciones, propuesta por los demandados y su envío ante el Tribunal de Tierras, que dicho pedimento debe ser rechazado en razón de que, contrariamente a lo afirmado por los demandados, la Parcela No. 214 del Distrito Catastral No. 8 de San Cristóbal, estuvo registrada a nombre de la recurrente, mediante el Certificado de Título No. 3780, hasta que éste fue cancelado mediante oficio No. 1600 de 1964, del Secretario de Estado de Propiedades Públicas, de acuerdo con la Ley No. 48 de 1963 que declaró confiscados definitivamente, los bienes de las personas pertenecientes a la familia Trujillo, pasando a ser dicho inmueble propiedad del Estado Dominicano; que, como la litis tiene por objeto determinar una cuestión referente a la reivindicación del indicado inmueble es obvio que se trata de un asunto de la competencia del Tribunal de Confiscaciones y no del Tribunal de Tierras, puesto que el artículo 18 de la Ley No. 5924 de 1962 sobre Confiscación General de Bienes, a cuyo tenor en materia civil dicho tribunal será competente de una manera exclusiva para conocer: a) De todas las contestaciones que se originen o tengan por objeto bienes confiscados, aún cuando estén éstos registrados o en curso de saneamiento catastral...; que su objetivo fue el impedir la fragmentación de los procesos, asegurar la enmienda de errores y garantizar el respeto de los derechos de terceros en los bienes objeto de confiscación general, así como las acciones intentadas contra los adquirientes o causahabientes de las personas cuyos bienes hubieren sido confiscados, y con mayor razón si se trata, como en la especie, de la confiscación a una persona, por error o abuso de poder, en razón de no haber sido condenada a la confiscación de bienes;

Considerando, que consta asimismo en dicho fallo, respecto de la prescripción extintiva de la acción interpuesta por la recurrente, propuesta subsidiariamente por los demandados, que ésta debe ser desestimada en razón de que dicha acción tiene su fuente en el enriquecimiento ilícito, como consecuencia del abuso o usurpación de poder, y no fue aportada prueba alguna de que el inmueble de que se trata entró en el patrimonio del Estado como consecuencia de una transferencia, por mandato de la ley o por decisión judicial; que en este sentido, afirma la Corte, el artículo 33 de la indicada Ley No. 5924 de 1962 expresamente faculta al Tribunal de Confiscaciones a declarar no oponibles la prescripción en caso de abuso o usurpación del poder que imperó en la pasada tiranía;

Considerando, que, por otra parte, consta en la sentencia impugnada que no es posible la restitución a favor de la recurrente del inmueble reclamado, por haberse construido en el mismo, un complejo industrial de gran dimensión, situación que no ha negado la actual recurrente al concluir subsidiariamente en el sentido de que dicho inmueble no puede serle restituido por encontrarse dentro de las previsiones del artículo 37 de la citada Ley sobre Confiscación General de Bienes; que, en lo que respecta a la indemnización solicitada por la recurrente, el citado texto legal prevé que el tribunal declarará , cuando proceda, que la demandante tiene el derecho a una compensación y enviará a las partes para que se pongan de acuerdo ante el juez que comisiona dentro de su mismo seno, respecto del monto y las modalidades de la compensación; que la Corte es de criterio que debe excluir de responsabilidad a la Refinería de Petróleo, S. A., a The Shell Company (W. I.) en la litis, por entender que solo el Estado Dominicano es responsable ante la hoy recurrente por la confiscación del inmueble;

Respecto del medio inadmisión:

Considerando, que en su memorial de defensa, la Refinería de Petróleo, S. A. (REFIDOMSA), propone la inadmisibilidad del presente recurso de casación por tener carácter preparatorio la sentencia impugnada; que si bien dicho fallo contiene determinadas decisiones, como las de excluir a las dos demandadas, la Shell Company (W. I.) y la Refinería Dominicana de Petróleo, S. A., en sus disposiciones Quinto y Sexto ordena una medida de instrucción cuando designa un juez de su propio seno en virtud del artículo 37 de la Ley No. 5924 de 1962 sobre Confiscación General del Bienes, para que, de común acuerdo con las partes, determine el monto y las modalidades de la indemnización reconocida a la demandante, fijando una audiencia para tales fines;

Considerando, que de acuerdo con el artículo 452 del Código de Procedimiento Civil es preparatoria la sentencia dictada para la sustanciación de la causa, y poner el pleito en estado de recibir fallo definitivo; que se considera interlocutoria porque prejuzga el fondo, la sentencia que ordena una medida de instrucción encaminada a la prueba de hechos precisos cuyo establecimiento puede ser favorable a una de las partes, que es el caso; que en efecto, el examen de los motivos y el dispositivo del fallo impugnado pone de manifiesto su carácter decisorio de donde resulta que la medida ordenada por la Corte a-qua en ejecución de lo ordenado por el artículo 37 de la mencionada ley, no es mas que la consecuencia de la decisión de la Corte contenida en los ordinales primero tercero y cuarto de dicha sentencia en cuya virtud acoge la demanda en reinvindicación interpuesta por la hoy recurrente, excluye de responsabilidad de los demandados, reconoce la imposibilidad de restituir el inmueble confiscado y el derecho de la recurrente a una compensación, por lo que procede desestimar el medio de inadmisibilidad propuesto por la recurrida, Compañía Dominicana de Petróleo, S. A.;

Respecto del recurso de casación:

Considerando, que es obligación de los jueces del fondo justificar el dispositivo de sus fallos mediante una motivación suficiente, clara y precisa, respecto de todas las conclusiones de las partes, sean éstas principales o subsidiarias; que no obstante, la Corte a-qua en su fallo impugnado, haber motivado los aspectos de su dispositivo cuando acoge la demanda en reivindicación de la Parcela No. 214 del Distrito Catastral Número 8 de San Cristóbal, interpuesta por la recurrente, cuando asimismo declara, que por existir en el citado inmueble edificaciones de importancia debe ser aplicado el artículo 37 de la

Ley No. 5924 de 1962 sobre Confiscación General de Bienes, por cuya razón no puede ser restituido éste a su dueño, por lo que tiene derecho a una compensación, comisionando al efecto, en virtud de la citada disposición legal, a un juez de esa Corte para que, ante dicho magistrado, las partes en causa se pongan de acuerdo sobre dicha compensación, no justifica en cambio, mediante una motivación suficiente, clara y precisa, la exclusión de la Refinería Dominicana de Petróleo, S. A. y The Shell Company (W. I.) de su responsabilidad por la confiscación del inmueble indicado, no obstante los pedimentos formales y explícitos formulados por la recurrente, en el sentido de que las empresas indicadas fueran condenadas solidariamente con el Estado Dominicano en razón del despojo y consiguiente empobrecimiento de su patrimonio, y el enriquecimiento injusto y sin causa de los demandados; que en tal virtud procede acoger el medio de casación propuesto por la recurrente y casar la sentencia impugnada en el aspecto señalado, por haber incurrido en la violación del artículo 141 del Código de Procedimiento Civil.

Por tales motivos: **Primero:** Declara inadmisible el medio de inadmisibilidad propuesto por la recurrida, Refinería Dominicana de Petróleo, S. A., por improcedente e infundado; **Segundo:** Casa la sentencia No. 163/939 del 12 de marzo de 1998, dictada por la Cámara Civil de la Corte de Apelación de Santo Domingo, en funciones de Tribunal de Confiscaciones, limitado a lo dispuesto en el ordinal Segundo del indicado fallo, y envía el asunto, así delimitado, por ante la Cámara Civil y Comercial de la Corte de Apelación de Santiago en sus mismas atribuciones; **Tercero:** Condena a los recurridos al pago de las costas ordenando su distracción en provecho de los licenciados Dilia Leticia Jorge Mera y Juan Manuel Ubiera, por haberlas avanzado en su totalidad.

Así ha sido hecho y juzgado por la Cámara Civil de la Suprema Corte de Justicia, y la sentencia pronunciada por la misma, en la ciudad de Santo Domingo de Guzmán, Distrito Nacional, en su audiencia pública del 2 de abril del 2003.

Firmado: Rafael Luciano Pichardo, Eglys Margarita Esmurdoc, Margarita A. Tavares, Ana Rosa Bergés Dreyfous y José Enrique Hernández Machado. Grimilda Acosta, Secretaria General.

La presente sentencia ha sido dada, firmada y pronunciada por los señores Jueces que figuran al pie, en la audiencia pública del día mes y año en ella expresados, y fue firmada, leída y publicada por mi, Secretaria General, que certifico.

www.suprema.gov.do

`KRETORNAR`

# Exhibit B-2

Judgment Consultation of the Supreme Court of Justice

| | |
|---|---|
| Date | 2/4/2003 |
| Matter | Civil |
| Appellant | Amelia Paiewonsky Batlle de Gómez. |
| Attorneys | Alfonso Mendoza, Dilia Leticia Jorge Mera & Juan Manuel Ublera. |
| Respondent | Refinería Dominicana de Petróleo, S. A. (REFIDOMSA). |
| Attorneys | Dr. Wenceslao Vega B., Luis Eligio Carela Valenzuela & Miguel A. García Vargas. |

## CIVIL CHAMBER
### Chamber of Public Hearings
### April 2, 2003

Presiding: Rafael Luciano Pichardo.

God, Nation and Liberty

In the Name of the Republic, the Civil Chamber of the Supreme Court of Justice, acting as the Court of Annulment, has issued the following judgment:

On the remedy of annulment interposed by Amelia Paiewonsky Batlle de Gómez, Dominican, married, homemaker, domiciled and resident in this city, bearer of I. D. No. 011-0097896-4, against judgment No. 163/939 dated March 12, 1998, reported by the Civil Chamber of the Appeals Court of Santo Domingo serving as the Court of Confiscation, whose disposition is copied below;

After hearing the bailiff on duty read the roll;

After hearing the reading of their conclusions by Alfonso Mendoza for himself and for Dilia Leticia Jorge Mera and Juan Manuel Ublera, attorneys for the petitioner;

After hearing the opinion of the Magistrate Procurator General of the Republic, which ends: "Who proceeds to refuse the remedy of annulment which is under consideration, for the reasons given;"

After reading the memorial of annulment deposited with the General Secretary of the Supreme Courte of Justice on October 3, 2001, signed by Drs. Wenceslao Vega B., Luis Eligio Carela Valenzuela and Miguel A. García Vargas, attorneys for the above-mentioned Refinería Dominicana de Petróleo, S. A. (REFIDOMSA);

After reading Law No. 25 of 1991, modified by Law No. 156 of 1997, and Articles 1, 20, and 65 of the Law of Procedures of Annulment;

The COURT, in public hearing on February 6, 2002, being present Judges: Rafael Luciano Pichardo, President; Eglys Margarita Esmurdoc, Margarita A. Tavares, Ana Rosa Bergés Dreyfous and José Enrique Hernández Machado, and after having deliberated those judges who signed below;

Whereas, in the judgment herein impugned and in the documents which refer to it, it is recorded that for the purposes of a request for recovery of real property interposed by Amelia Margarita Paiewonsky Batlle de Gómez against the Dominican State, The Shell Company (W. I.) and the Refinería Dominicana de Petróleo, S. A., the Civil Chamber of the Court of Appeals of Santo Domingo, functioning as the Court of Confiscation issued on March 12, 1998, the judgment now

challenged, and made the following disposition: "**Firstly:** It accepts as good and valid in terms of form the request for recovery of Lot No. 214 of Land District No. 8 of San Cristobal, interposed by Mrs. Amelia Margarita Paiewonsky Batlle de Gómez against the Dominican State, the Refineria Dominicana de Petróleo, S. A. and The Shell Company (West Indies) Limited, as having been interposed in accordance with the law; **Secondly:** It excludes, as regards background, the Refineria Dominicana de Petróleo, S. A. and The Shell Company (West Indies) Limited because the responsibility for the confiscation of the real property mentiones is exclusively that of the Dominican State; **Thirdly:** It declares that the real property claimed cannot be restored or returned to its legitimate owner, Mrs. Amelia Margarita Paiewonsky Batlle de Gómez, because that property is under the provisions of Article 37 of Law No. 5924 of May 26, 2962; **Fourthly:** It declares that the petitioner, Mrs. Amelia Margarita Paiewonsky Batlle de Gómez, has the right to compensation; **Fifthly:** It commissions Magistrate Dr. Marcos Ricardo Álvarez Gómez, Judge of this court, so that the parties to this cause may come to an accord before this judge in terms of the amount and the terms of compensation; **Sixthly:** It fixes a hearing for Monday, May 11, 1998, at 10:00 a.m., in the Council Chamber, so that the parties may meet before the Magistrate commissioned in point five of the present judgment; **Seventhly:** It will pay costs;"

Whereas, the claimant alleges in support of her appeal for annulment the following sole reason: a lack of motive and consequent violation of Article 141 of the Code of Civil Procedures;

Whereas, in the development of her sole reason for annulment, the claimant alleges in summary that the Dominican State took Lot 214 of Land District No. 8 of San Cristobal, her property, through an abuse of power, since said claimant had not had the real property condemned nor had said property been transferred; that the above-mentioned property was taken by the Dominican State for the building of the Refinería Dominicana de Petróleo, S. A., in which Shell Company (W. I.) took part, the Dominican State and the abovementioned entity receiving shares in equal parts; that, because of taking part in the indicated illicit act, the current claimant sued the Dominican State, the Refinería Dominicana de Petróleo, S. A., and Shell Company (W. I.); but despite the statement of law and the deeds alleged by the claimant, the Court from which the case was appealed excluded from the demand Shell Company and the Refinería Dominicana de Petróleo, S. A., considering that only the Dominican State was responsible to the claimant, without giving any reason;

Whereas, it is clear from the judgment challenged with respect to the incompetence of the Court of Confiscation as proposed by the defendants and its referral to the Land Court, that such petition should be refused because, contrary to what was maintained by the defendants, Lot No. 214 of the Land District No. 8 of San Cristobal, was registered in the name of the claimant, through Title Certificate No. 3780, until such time as it was cancelled by Form 1600 of 1964 from the Secretary of State for Public Properties, in accordance with Law No. 48 of 1963 which declared definitively confiscated the assets of persons belonging to the Trujillo family, such real properties passing to the Dominican State; that, since the lawsuit has as its object a question referring to the recovery of the said real property, it is obvious that it is a matter under the authority of the Court of Confiscation and not of the Land Court, since Article 18 of Law No. 5924 of 1962 on General Confiscation of Assets, to whose tenor in civil matters the said court will be competent in an exclusive matter to understand: a) Of all allegations which originate or have as their object confiscated assets, even when these are recorded or in the process of property reparation...; that their objective was to avoid the fragmentation of the proceedings, assure the correction of errors and guarantee the respect for the rights of third parties to the assets which were the object of general confiscation, as well as actions undertaken against the purchasers or assignees of persons whose assets had been confiscated, and even more if it is a case, as in the present instance, of the confiscation from a person, by error or abuse of power, given that there had been no sentence of confiscation of assets;

Whereas, the abovementioned judgment, with reference to the perpetual bar to action interposed by the petitioner, proposed ancillarily by the respondents, that this should be dismissed because such an action has its source in illicit enrichment as a consequence of the abuse or usurpation of

power, and that there was no proof provided that the asset in question entered the patrimony of the State as the consequence o f a transfer, as mandated by law or by judicial decision; that in this sense, affirms the Court, Article 33 of the abovementioned Law No. 5924 of 1962 expressly authorized the Tribunal of Confiscation to declare not opposable prescription in the case of abuse or usurpation of the power that was in control during the past tyranny;

Whereas, on the other hand, the challenged judgment indicates that it is not possible to return to the claimant the asset claimed, since an industrial complex of great size has been constructed thereon, a situation which the claimant has not denied by concluding in an ancillary manner that the indicated asset cannot be returned to her because it is under the provisions of Article 37 of the cited Law of General Confiscation of Assets; that, as concerns indemnification requested by the claimant, the cited legal text states that the court shall declare, when it proceeds, that the claimant has the right to compensation, and will send the parties to come to agreement before the judge that it commissions from within its own body concerning the amount and terms of compensation; that the Court is of the opinion that it should exclude from responsibility the Refinería de Petróleo, S. A., and The Shell Company (W. I.) in the lawsuit, which is to make clear that only the Dominican State is responsible before the current claimant for the confiscation of the asset;

Respecting the claim of inadmissibility:

Whereas, in its memorial of defense, the Refinería de Petróleo, S. A. (REFIDOMSA) proposes the inadmissibility of the present remedy of annulment because the judgment impugned has a preliminary nature, that if the stated judgment contains specific decisions, such as those to exclude the two defendants, Shell Company (W.I.) and the Refinería Dominicana de Petróleo S. A., in its Fifth and Sixth provisions it orders a measure of instruction when it designates a judge from within its own body by virtue of Article 37 of Law No. 5924 of 1962 on General Confiscation of Assets, to, in common agreement with the parties, determine the amount and terms of compensation recognized as due to the claimant, establishing a hearing for that purpose;

Whereas, in accord with Article 452 of the Code of Civil Procedures the judgment for the substantiation of the cause is preparatory, and to put the lawsuit in condition to receive a definitive judgment; that it is considered interlocutory because it prejudges the base, the verdict that orders a measure of instruction designed to prove specific deeds whose establishment can be favorable to one of the parties, which is the case; that in effect, the examination of the motives and the provision of the impugned judgment clarifies its decisive nature from which it results that the measure ordered by the Court from which the case was appealed, in the execution of that which is required by Article 37 of the abovementioned law, is no more than the consequence of the decision of the Court contained in numbers one, three, and four of the cited judgment by virtue of which the request for recovery interposed by the current claimant excludes from responsibility the defendents, recognizes the impossibility of restitution of the confiscated asset and the right of the claimant to compensation, by which it proceeds to dismiss the claim of inadmissibility proposed by the defendent Compañía Dominicana de Petróleo, S. A.;

Respecting the remedy of annulment:

Whereas, it is the obligation of the judges to justify the provision of its judgments concerning sufficient, clear and precise motivation as concerns all the conclusions of the parties, be they principal or subsidiary; that nevertheless the Court from which the case was appealed for its impugned judgment, to have motivated the aspects of its provision when it accepts the request for recovery of Lot 214 of Land District No. 8 of San Cristobal interposed by the claimant, when it also declares that since important buildings exist on that cited lot Article 37 of Law 5924 of 1962 on General Confiscation of Assets should be applied, for which reason the lot cannot be returned to its owner, so that she has the right to compensation, commissioning for that purpose, by virtue of the cited legal provision, a judge of that Court so that before that magistrate the parties to the cause may come to an agreement on such compensation, on the other hand it does not justify, by

sufficient, clear and precise motivation, the exclusion of the Refinería Dominicana de Petróleo S. A. and The Shell Company (W. I.) from its responsibility for the confiscation of the indicated asset, given the formal and explicit petitions formulated by the claimant, in the sense that the indicated businesses were equally guilty along with the Dominican State on the basis of dispossession and consequent impoverishment of her patrimony, and the unjust and without cause enrichment of the defendents; that in virtue thereof it shall proceed to accept the matter of annulment proposed by the claimant and annul the judgment impugned in the indicated respect, for having violated Article 141 of the Code of Civil Procedures.

Therefore: **Firstly:** it declares inadmissible the concept of inadmissibility proposed by the defendent Refinería Dominicana de Petróleo, S. A., as inappropriate and unfounded; **Secondly:** It annuls judgment No. 163/939 of March 12, 1998, pronounced by the Civil Chamber of the Appeals Court of Santo Domingo, functioning as the Court of Confiscation, limited to the dispositions of the Second number of the indicated judgment, and sends the matter, thus defined, to the Civil and Commercial Chamber of the Court of Appeals of Santiago with its same duties; **Thirdly:** It sentences the defendents to the payment of costs, ordering their payment to the order of attorneys Dilia Leticia Jorge Mera and Juan Manuel Ubiera, who had advanced payment in their entirety.

Thus it has been done and sentenced by the Civil Chamber of the Supreme Court of Justice, and the judgment pronounced by that body, in the city of Santo Domingo de Guzmán, National District, in its public hearing of April 2, 2003.

Signators: Rafael Luciano Pichardo, Eglys Margarita Esmurdoc, Margarita A. Tavares, Ana Rosa Bergés Dreyfous and José Enrique Hernández Machado. Grimilda Acosta, General Secretary.

The present verdict has been given, signed, and pronounced by the Judges who signed below, in the public hearing on the day, month and year indicated, and was signed, read, and published by me, the Secretary General. So sworn.

I certify this to be a true and accurate translation
of the original document presented to me.

*Nancy T. Hancock*

Nancy T. Hancock, Notary Public
My commission expires 1/30/10.

Director, Language Company Translations, LC
Norman, Cleveland County, OK

NOTARY PUBLIC
IN AND FOR
STATE OF
OKLAHOMA

**OFFICIAL SEAL**
Nancy T. Hancock
Commission # 06001189
Expires January 30, 2010

# Exhibit C

Consulta Sentencias SCJ.

Consulta sentencias de la Suprema Corte de Justicia

Fecha        1/10/2003
Materia       Constitucional
Recurrente (s)Fundación Institucionalidad y Justicia, Inc. y compartes
Abogado (s)
Recurrido (s)
Abogado (s)

**Dios, Patria y Libertad**

**República Dominicana**

nicana

En Nombre de la República, la Suprema Corte de Justicia, regularmente constituida por los Jueces Jorge A. Subero Isa, Presidente, Rafael Luciano Pichardo, Primer Sustituto de Presidente, Eglys Margarita Esmurdoc, Segundo Sustituto de Presidente; Hugo Álvarez Valencia, Juan Luperón Vásquez, Margarita A. Tavares, Julio Ibarra Ríos, Enilda Reyes Pérez, Dulce Ma. Rodríguez de Goris, Julio Aníbal Suárez, Víctor José Castellanos Estrella, Ana Rosa Bergés Dreyfous, Edgar Hernández Mejía, Darío O. Fernández Espinal, Pedro Romero Confesor y José E. Hernández Machado, asistidos de la Secretaria General, en la Sala donde celebra sus audiencias, en la ciudad de Santo Domingo de Guzmán, Distrito Nacional, hoy 1ro. de octubre del 2003, años 160E de la Independencia y 141E de la Restauración, dicta en audiencia pública, la siguiente sentencia:

Sobre la acción en inconstitucionalidad intentada por Fundación Institucionalidad y Justicia, Inc., asociación sin fines de lucro organizada de conformidad con la Ley No. 520 del 1920, con domicilio en el piso 8 de la Torre Piantini, ubicada en la intersección de las Avenidas Abraham Lincoln y Gustavo Mejía Ricart, de la ciudad de Santo Domingo, Distrito Nacional, debidamente representada por su Presidenta, Lic. Fabiola Medina Garnes, dominicana, abogada, mayor de edad, cédula de identidad y electoral No. 001-0094970-0, domiciliada y residente en esta ciudad de Santo Domingo, Distrito Nacional; Asociación Dominicana de Abogados Empresariales, Inc., asociación sin fines de lucro, organizada de conformidad con la Ley No. 520 de 1920, con domicilio en la ciudad de Santo Domingo, Distrito Nacional, debidamente representada en la presente instancia por su Presidente, Lic. Marcos Peña Rodríguez, dominicano, mayor de edad, casado, portador de la cédula y electoral No. 001-0167246-7, domiciliado y residente en esta ciudad; Asociación Nacional de Jóvenes Empresarios (ANJE), asociación sin fines de lucro, organizada de conformidad con la Ley 520 de 1920, con domicilio en la Av. Sarasota No. 20, Torre Empresarial, de esta ciudad de Santo Domingo, Distrito Nacional, debidamente representada por su Presidenta, Lic. Marisol Vicens, dominicana, mayor de edad, casada, portadora de la cédula de identidad y electoral No. 001-0974105-8, domiciliada y residente en esta ciudad; Centro de Estudios Sociales P. Juan Montalvo, S. J., del Centro Bonó, Inc., una institución sin fines de lucro, debidamente organizada y existente de conformidad con las leyes de la República Dominicana, muy especialmente al amparo de la Ley No. 520 de 1920, con su asiento social localizado en la calle Josefa Brea número 65, de esta ciudad de Santo Domingo, debidamente representada por su Director, Jorge Cela, dominicano, mayor de edad, soltero, portador de la cédula de identidad y electoral No. 001-0340040-4, domiciliado y residente en esta ciudad; Participación Ciudadana, Inc., una institución sin fines de lucro, debidamente organizada y existente de conformidad con las leyes de la República Dominicana, muy especialmente al amparo de la Ley No. 520 de 1920, con su domicilio localizado en la calle Desiderio Arias No. 25, Ensanche la Julia, de esta ciudad, debidamente representada por su Coordinadora General, Miriam Díaz Santana, dominicana, mayor de edad, casada, socióloga, cédula de identidad y electoral No. 001-0020843-8, domiciliada y residente en esta ciudad; Centro Dominicano de Asesoría e Investigaciones Legales (CEDAIL), una institución sin fines de lucro, debidamente organizada y existente de conformidad con las leyes de la República

Dominicana, muy especialmente al amparo de la Ley No. 520 de 1920, con su domicilio localizado en la Ave. Mella No. 11 D, Santa Bárbara, de esta ciudad, debidamente representada por su Director Ejecutivo, Dr. Pedro Ubiera, dominicano, mayor de edad, casado abogado, portador de la cédula de identidad y electoral No. 001-0134709-4, domiciliado y residente en esta ciudad, quienes tienen como abogados constituidos y apoderados especiales a los Licdos. Carlos Salcedo y Marcos Peña Rodríguez, con estudio profesional abierto para los fines de la presente instancia, en el piso 8 de la Torre Piantini, ubicada en la intersección de las avenidas Gustavo Mejía Ricart y Abraham Lincoln, de esta ciudad, lugar donde los requerientes hacen elección de domicilio, contra la parte capital del artículo 1 del Decreto No. 139-03, del 9 de febrero de 2003, del Poder Ejecutivo;

Vista la instancia dirigida a la Suprema Corte de Justicia, el 14 de febrero de 2003, por las impetrantes y suscrita por sus abogados, la cual concluye así: **"Primero:** Declarar la inconstitucionalidad del artículo 1 del Decreto No. 139-03, de fecha nueve (9) de febrero del dos mil tres (2003), dictado por el Poder Ejecutivo, que aprueba un recargo de un 10% en perjuicio de varios agentes económicos de la nación, por desconocer preceptos constitucionales y, en consecuencia; **Segundo:** Pronunciar la nulidad erga omnes del precitado artículo del Decreto No. 139-03, por aplicación de lo dispuesto por el artículo 46 de la Constitución";

La Suprema Corte de Justicia después de haber deliberado y visto los artículos 67, inciso 1, 4, 37, inciso 1 y 46 de la Constitución de la República y 13 de la Ley No. 156-97, así como los demás textos invocados por las impetrantes;

Considerando, que el artículo 67, inciso 1, de la Constitución de la República dispone que corresponde, exclusivamente, a la Suprema Corte de Justicia, sin perjuicio de las demás atribuciones que le confiere la ley, conocer en única instancia de la constitucionalidad de las leyes, a solicitud del Poder Ejecutivo, de uno de los Presidentes de las Cámaras del Congreso Nacional o de parte interesada;

Considerando, que en la especie, la acción intentada se refiere a la petición de declaratoria de inconstitucionalidad por vía directa o principal de la parte capital del artículo 1 del Decreto No. 139-03, del 9 de febrero de 2003, dictado por el Poder Ejecutivo, que establece con carácter transitorio de tres meses, un recargo de un 10% (diez por ciento) sobre las importaciones de bienes y vehículos de motor de cualquier tipo, exceptuando los bienes alimenticios, medicamentos, materias primas, maquinarias y equipos, a partir de la promulgación de dicho decreto;

Considerando, que las impetrantes alegan, en apoyo de su instancia, en síntesis, lo siguiente: a) que como medida paliativa y provisional de los problemas que sufre nuestra economía, el 9 de febrero de 2003, fue emitido por el Poder Ejecutivo, el Decreto No. 139-03 que establece con carácter transitorio de tres meses, en su artículo 1, un recargo de 10% (diez por ciento) sobre las importaciones de bienes y vehículos de motor de cualquier tipo, exceptuando los bienes alimenticios, medicamentos materias primas, maquinarias y equipos; b) que, sin embargo, sin cuestionar la oportunidad o procedencia de la medida, desde el punto de vista económico, la misma resulta inconstitucional desde el punto de vista de la norma sustantiva que rige en República Dominicana, al establecer mediante decreto un recargo selectivo de un diez por ciento (10%) a las importaciones no indispensables; c) que las entidades impetrantes, poseedoras de personalidad jurídica tienen el derecho de demandar, por vía de acción directa, al amparo del artículo 67, inciso 1 de la Constitución, la inconstitucionalidad de una ley, decreto, resolución o reglamento, cuando cualquiera de ellas ha afectado sus derechos fundamentales o transgredido una o varias normas fundamentales, como ocurre en la especie, pues el Decreto No. 139-03, objeto de la presente acción les afecta y no solamente ha causado agravios a las impetrantes, sino que constituye una amenaza actual y para el futuro tanto para ellas como para las personas de derecho prevalecidas del principio de legalidad y de supremacía constitucional; d) que de acuerdo con los principios que rigen el derecho constitucional dominicano, y así se ha pronunciado la Suprema Corte de Justicia, este tribunal es competente para conocer de los recursos de inconstitucionalidad; e) que la acción por ellas intentada es admisible en razón de que en su caso se cumplen los

criterios fijados para su admisión que versan sobre la noción de parte interesada, para determinar la calidad del denunciante; la gravedad y seriedad de la denuncia; y el alcance de la declaratoria de inconstitucionalidad; f) que las disposiciones del Decreto No. 139-03, dictado por el Poder Ejecutivo son contrarias a la Constitución, ya que dichas normas violan los artículos 4 y 37.1 de la misma, porque su artículo 1 desborda los límites y ámbito de la competencia del Poder Ejecutivo, en detrimento de la facultad exclusiva y excluyente que otorgan esas disposiciones sustantivas al Congreso Nacional de establecer los impuestos en virtud del principio de la legalidad tributaria y de la separación de los poderes; g) que al establecer el citado artículo 37.1 que "son atribuciones del congreso: 1) establecer los impuestos o contribuciones generales y determinar el modo de su recaudación e inversión", ello significa que el Presidente de la República no tiene calidad para establecer impuestos ni modificar los existentes, pues tal facultad corresponde exclusivamente al Congreso, por lo que el citado decreto es nulo por aplicación del artículo 46 de la Constitución;

Considerando, que el artículo 1 del Decreto No. 139-03, del 9 de febrero de 2003, en su parte capital expresa lo siguiente: "A partir de la promulgación del presente Decreto se establece con carácter transitorio de tres meses un recargo de un 10% (diez por ciento) sobre las importaciones de bienes y vehículos de motor de cualquier tipo, exceptuando los bienes alimenticios, medicamentos, materias primas, maquinarias y equipos";

Considerando, que efectivamente el artículo 4 de la Constitución consagra la división de los poderes y hace a sus encargados responsables y precisa que éstos no pueden delegar sus atribuciones, las cuales son únicamente las determinadas por la Constitución y las leyes; que entre esas atribuciones al Congreso le corresponde, según el artículo 37, numeral 1, como Poder Legislativo, establecer los impuestos o contribuciones generales y determinar el modo de su recaudación e inversión; que entre las atribuciones reservadas a la competencia del Presidente de la República al tenor del artículo 55 de la Constitución, no se encuentra la de instituir impuestos o contribuciones; que el Decreto No. 139-03, del 9 de febrero de 2003, fija en la parte capital de su artículo 1, un recargo de un 10% (diez por ciento), desde la fecha de su promulgación y hasta por un período de tres meses, sobre las importaciones de bienes y vehículos de motor de cualquier tipo, exceptuando los bienes alimenticios, medicamentos, materias primas, maquinarias y equipos; que el recargo, conforme al Derecho fiscal, no es más que un aumento del impuesto que el contribuyente debe pagar al erario como medida general o como sanción; que como el decreto de que se trata establece un recargo como medida general a las importaciones a que la disposición ejecutiva se refiere, resulta evidente la transgresión, por vía del señalado decreto, de las disposiciones del numeral 1 del artículo 37 de la Constitución, al crear un impuesto que sólo al Congreso Nacional, corresponde establecer; que al carecer de capacidad el Poder Ejecutivo para disponer un recargo de un diez por ciento (10%) a las importaciones a que se refiere el decreto argüido de inconstitucionalidad, como se ha visto, dicho decreto es nulo por contravenir al artículo 46 de la Ley Sustantiva, según el cual, "son nulos de pleno derecho toda ley, decreto, resolución o acto contrarios a esta Constitución".

Por tales motivos: **Primero:** Acoge la instancia elevada por la Fundación Institucionalidad y Justicia, Inc., y compartes, y, en consecuencia, declara no conforme a la Constitución, el artículo 1, en su parte capital del Decreto No. 139-03, del 9 de febrero del 2003, del Poder Ejecutivo; **Segundo:** Ordena que la presente sentencia sea comunicada al Magistrado Procurador General de la República para los fines de lugar, y a las impetrantes, y publicada en el Boletín Judicial.

Firmado: Jorge A. Subero Isa, Rafael Luciano Pichardo, Eglys Margarita Esmurdoc, Hugo Álvarez Valencia, Juan Luperón Vásquez, Margarita A. Tavares, Julio Ibarra Ríos, Enilda Reyes Pérez, Dulce Ma. Rodríguez de Goris, Julio Aníbal Suárez, Víctor José Castellanos Estrella, Ana Rosa Bergés Dreyfous, Edgar Hernández Mejía, Darío O. Fernández Espinal, Pedro Romero Confesor y José E. Hernández Machado. Grimilda Acosta, Secretaria General.

La presente sentencia ha sido dada y firmada por los señores Jueces que figuran en su encabezamiento, en la audiencia pública del día, mes y año en él expresados, y fue

firmada, leída y publicada por mí, Secretaria General, que certifico.

www.suprema.gov.do

<RETORNAR

# Exhibit D

**God, Nation and Liberty**
**Dominican Republic**

In the Name of the Republic, the Supreme Court of Justice, normally constituted by Judges Jorge A. Subero Isa, President, Rafael Luciano Pichardo, First Vice-Presidente, Eglys Margarita Esmurdoc, Second Vice-Presidente; Hugo Alvarez Valencia, Juan Luperón Vásquez, Margarita A. Tavares, Julio Ibarra Ríos, Enilda Reyes Pérez, Dulce María Rodríguez de Goris, Julio Aníbal Suárez, Víctor José Castellanos Estrella, Ana Rosa Bergés Dreyfous, Edgar Hernández Mejía, Darío O. Fernández Espinal, Pedro Romero Confesor y José E. Hernández Machado, Assisted by the Secretary General, in the Courtroom in which its hearings are held, in the city of Santo Domingo de Guzmán, National District, on October 1, 2003, 160th year of Independence and 141st of Restoration, issues in open hearing the following judgment:

On the action on unconstitutionality brought by Fundación Institucionalidad y Justicia, Inc., a non-profit association organized in conformity with Law No. 520 of 1920, domiciled on the eighth floor of the Torre Piantini, located at the intersecion of Abraham Lincoln and Gustavo Mejía Ricart Avenues, in the city of Santo Domingo, National District, duly represented by its President, Lic. Fabiola Medina Garnes, Dominican, attorney, adult, identity and voting registration number 001-0094970-0, domiciled and resident in this city of Santo Domingo, National District; Asociación Dominicana de Abogados Empresariales, Inc., a non-profit association organized in conformity with Law No. 520 of 1920, domiciled in the city of Santo Domingo, National District, duly represented in the present instance by its President, Lic. Marcos Prña Rodríguez, Dominican, adult, married, bearer of identity and voting registration number 001-0167246-7, domiciled and resident in this city; Asociación Nacional de Jóvenes Empresarios (ANJE), a non-profit association organized in conformity with Law No. 520 of 1920, domiciled at Sarasota Ave. No. 20, Torre Empresarial, of this city of Santo Domingo, National District, duly represented by its President, Lic. Marisol Vicens, Dominican, adult, married, bearer of identity and voting registration number 001-9074105-8, domiciled and resident in this city; Centro de Estudios Sociales P. Juan Montalvo, S. J., of the Centro Bonó, Inc., a non-profit institution duly organized and existing in conformity with the laws of the Dominican Republic, especially under the protection of Law No. 520 of 1920, with its legal address at Josefa Frea Street, No. 65, of this city of Santo Domingo, duly represented by its Director Jorge Cela, Dominican, adult, single, bearer of identity and voting registration number 001-0340040-4, domiciled and resident in this city; Participación Ciudadana, Inc., a non-profit institution, duly organized and existing in conformity with the laws of the Dominican Republic, especially under the protection of Law No. 520 of 1920, with its legal address at Desiderio Arias Street, No. 25, suburb la Julia of this city, duly represented by its General Coordinator, Miriam Díaz Santana, Dominican, adult, married, sociologist, bearer of identity and registration number 001-0020843-8, domiciled and resident in this city; Centro Dominicano de Asesoría de Investigaciones Legales (CEDAIL), a non-profit institution, duly organized and existing in conformity with the laws of the Dominican Republic, especially under the protection of Law No. 520 of 1920, with its legal address at Mella Ave No. 11 D, Santa Bárbara, of this city, duly represented by its Executive Director, Dr. Pedro Ubiera, Dominican, adult, married, attorney, bearer of identity and registration number 001-0134709-4, domiciled and resident in this city, who have as especially constituted and empowered attorneys Carlos Salcedo and Marcos Peña Rodríguez, with open professional study for the purposes of the present instance, on the eighth floor of the Torre Piantini, located at the intersection of Gustavo Mejía Ricart and Abraham Lincoln Avenues, of this city, the place in which the requirers have chosen as domicile, against the capital part of Article 1 of Decree No. 139-03, of February 9, 2003, by the Executive Power;

Given the petition directed to the Supreme Court of Justice on February 14, 2003, by the solicitants and agreed to by their attorneys, which concludes thus: "First: To declare the unconstitutionality of Article 1 of Decree No. 139-03, dated February 9, 2003, decreed by the Executive Power, which approves a surcharge of 10% against several economic agents of the nation, for ignoring constitutional precepts and, as a consequence; Second: to pronounce *ergo omnes* the nullity of the above-cited article of Decree No. 139-03, through the application of that which is disposed by Article 46 of the Constitution";

The Supreme Court of Justice, after having deliberated and seen Articles 67, Section 1, 4. 37, Section 1 and 46 of the Constitution of the Republic and 13 of Law No. 156-97, as well as the other texts cited by the solicitants;

Whereas, Article 67, Section 1, of the Constitution of the Republic disposes that it is the exclusive responsibility of the Supreme Court of Justice, without prejudice to other responsibilities conferred on it by law, to make known without benefit of appeal the constitutionality of laws at the request of the Executive Power, one of the Presidents of the Chambers of the National Congress, or an interested party;

Whereas, in specie the action planned refers to the petition for the declaration of unconstitutionality by direct or principal means of the capital part of Article 1 of Decree No. 139-03, of February 9, 2003, decreed by the Executive Power, which establishes for the period of three months a surcharge of 10% (ten per cent) on the importation of goods and motorized vehicles of any type, except for foodstuffs, medicines, raw materials, machinery, and equipment, as of the promulgation of such decree;

Whereas, the solicitants allege, in support of their petition, in summation, the following: a) that as a palliative and provisional measure to deal with the problems our economy is suffering, on February 9, 2003, Decree No. 139-03 was issued by the Executive Power, establishing for the period of three months a surcharge of 10% (ten per cent) on the importation of goods and motorized vehicles of any type, except for foodstuffs, medicines, raw materials, machinery, and equipment; b) that, nonetheless, without a consideration of the timeliness or origin of such a measure, from the economic point of view, such a decree is unconstitutional from the point of view of the substantive norm which rules in the Dominican Republic by establishing by decree a selective surcharge of ten per cent (10%) on imports considered non-essential; c) that the solicitant entities, possessed of juridical capacity, have the right to demand, through direct action, under the protection of Article 67, Section 1 of the Constitution, the unconstitutionality of a law, decree, resolution or ruling, when any one of them shall affect their fundamental rights or transgress one or more fundamental norms, as occurs in this classification, since Decree No. 139-03, the object of the present action, affects them and has caused injury not only to the solicitants, but constitutes a threat currently and in the future for them as well as for lawabiding persons taking advantage of the principles of constitutional legality and supremacy; d) that in consideration of the principles which govern Dominican constitutional law, and as the Supreme Court of Justice has stated, this tribunal is competent to understand the remedy of inconstitutionality; e) that the action by them intended is admissible given that in its case the criteria fixed for admission are complied with concerning the notion of an interested party to determine the quality of the denunciator, the gravity and seriousness of the denunciation, and the scope of the declaration of unconstitutionality; f) that the dispositions of Decree No. 139-03, decreed by the Executive Power, are contrary to the Constitution, since such norms violate Articles 4 and 37.1 thereof, since its Article 1 exceeds the limits and scope of competence of the Executive Power, to the detriment of the exclusive and excluding power that those substantive dispositions grant to the National Congress to establish taxes by virtue of the principle of the laws of taxation and of the separation of powers; g) that when the cited Article 37.1 establishes that "it shall be the duty of the Congress: 1)to establish taxes or general contributions and determine the manner of their collection and investment," that signifies that the President of the Republic does not have the right to establish taxes nor to modify those in existence, since such a responsibility is exclusively that of the Congress, so that the decree cited is null because of the application of Article 46 of the Constitution;

Whereas, Article 1 of Decree No. 139-03, of February 9, 2003, in its capital part expresses the following: "As of the promulgation of the present Decree there is established for the period of three months a surcharge of 10% (ten per cent) on the importation of goods and motorized vehicles of any type, exclusive of foodstuffs, medicines, raw materials, machinery, and equipment;"

Whereas, effectively Article 4 of the Constitution confirms the division of powers and makes those in charge responsible, making clear that they may not delegate their responsibilities, which are only those as determined by the Constitution and by laws; that among those responsibilities of the Congress are, according to Article 37, No. 2, as Legislative Power, to establish taxes or general contributions and determine the manner of their collection and investment; that among the

responsibilities reserved as the province of the President of the Republic, according to Article 55 of the Constitution, there is not that of establishing taxes or general contributions; that Decree No. 139-03 of February 9, 2003, fixes in the capital part of Article 1 a surcharge of 10% (ten per cent) as of the date of its promulgation and for a period of three months, on the importation of goods and motorized vehicles of any type, exclusive of foodstuffs, medicines, raw materials, machinery, and equipment; that the surcharge, according to fiscal law, is nothing more than an increase in the taxes which the taxpayer must pay to the state treasury as a general measure or sanction; that since the decree concerned establishes a surcharge as a general measure on importation to which the executive disposition refers, the transgression by the indicated decree of the dispositions of Number 1 of Article 37 of the Constitution is evident, considering that it creates a tax which only the National Congress is allowed to establish; that since the Executive Power lacks the capacity to impose a surcharge of ten per cent (10%) in importations as indicated in the decree argued to be unconstitutional, as has been seen, such decree is null by virtue of contravening Article 46 of the Substantive Law, according to which, "any law, decree, resolution or act contrary to this Constitution is null by full right."

Therefore: First: It accepts the petition raised by the Fundación Institucionalidad y Justicia, Inc., and other parties, and as a consequence declares Article 1 in its capital part of Decree No. 139-03, of February 9, 2003, of the Executive Power not to be in conformity with the Constitution; Second: It orders that the present judgment be communicated to the General Magistrate Procurator of the Republic for the purposes of this place, to the solicitants, and published in the Judicial Bulletin.

Jorge A. Subero Isa

Rafael Luciano Pichardo, Eglys Margarita Esmurdoc,

Hugo Alvarez Valencia, Juan Luperón Vásquez,

Margarita A. Tavares, Julio Ibarra Ríos,

Enilda Reyes Pérez, Dulce María Rodríguez de Goris,

Julio Aníbal Suárez, Víctor José Castellanos Estrella,

Ana Rosa Bergés Dreyfous, Edgar Hernández Mejía,

Darío O. Fernández Espinal, Pedro Romero Confesor,

José E. Hernández Machado

Grimelda Acosta
Secretary General

The present judgment has been given and signed by the Judges whose names appear at its beginning, in public hearing on the day, month and year indicated, and was signed, read, and published by me, the Secretary General. So sworn.

I certify this to be a true and accurate translation of the original document presented to me.

Nancy T. Hancock, Notary Public
My commission expires 1/30/10.

Director, Language Company Translations, LC
Norman, Cleveland County, OK

NOTARY PUBLIC
STATE OF OKLAHOMA
OFFICIAL SEAL
Nancy T. Hancock
Commission # 06001189
Expires January 30, 2010